**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 16 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

OLAF PETER JUDA,

       Plaintiff-Appellant,

v.

DENNIS MICHAEL NERNEY,
Assistant U.S. Attorney, Northern
District of California; STEPHEN
R. KOTZ, Assistant U.S. Attorney,
Albuquerque, New Mexico; JOHN J.
KELLY, U.S. Attorney, Albuquerque,
New Mexico; MICHAEL
YAMAGUCHI, U.S. Attorney,
San Francisco, California; ROBERT
L. HOLLER, District Director, U.S.
Customs Service, El Paso, Texas;
LEONARD S. WALTON, Acting
Assistant Commissioner, U.S.
Customs Service, Washington, D.C.;
BONNIE L. GAY, FOIA Unit,
attorney-in-charge, Washington, D.C.;
JOHN AND JANE DOES 1-25;
UNITED STATES OF AMERICA,

       Defendants-Appellees.

No. 97-2192
(D.C. No. CIV-96-584-JP)
(D. N.M.)

---

OLAF PETER JUDA,

       Plaintiff-Appellant,

v.

UNITED STATES CUSTOMS
SERVICE, ROBERT L. HOLLER,
JOY M. HUGHAN, DANIEL LUAR,
RITA ALFARO, DOLORES PAYAN,
GINA E. FUENTES, INTERNAL
REVENUE SERVICE, GEORGE
TERPACK, CAROLYN LEONARD,
TIMOTHY A. TOWNS, JOHN DOES,
JANE DOES,

          Defendants-Appellees.

No. 97-2326
(D.C. No. CIV-97-227-LH)
(D. N.M.)

---

## ORDER AND JUDGMENT  *

---

Before **PORFILIO** , **BARRETT** , and **HENRY** , Circuit Judges.


After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination

of these appeals.  See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9.  The cases are

therefore ordered submitted without oral argument.

---

*  This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

-2-

Olaf Peter Juda, proceeding pro se, filed these lawsuits to recover property administratively forfeited by the United States Customs Service and to obtain damages for alleged violations of his due process rights under the Fifth Amendment to the United States Constitution. The district court dismissed all claims. In case No. 97-2192, we affirm in part and reverse in part; in case No. 97-2326, we affirm.

## FACTUAL BACKGROUND

### I. The Criminal Case

On July 17, 1991, Juda was arrested by the United States Coast Guard and incarcerated in California for participating in a hashish smuggling scheme. He pled guilty to two counts of drug smuggling and one count of arson on the high seas on January 14, 1993, and was sentenced to a term of 262 months' imprisonment. The conviction was affirmed on appeal. See United States v. Juda , 46 F.3d 961, 969 (9th Cir. 1995).

### II. Forfeiture Proceedings

After Juda's arrest, the Customs Service, with the assistance of the office of the United States Attorney for the District of New Mexico, obtained federal seizure warrants and began forfeiture proceedings against his real and personal

property located in Albuquerque, Santa Fe, and Taos, New Mexico. The timing and sequence of the government's actions are of particular significance.

## A.    Real Property

Juda had entered into a contract with a developer to purchase a house under construction on a 1.010 acre lot in Taos County for $150,000. Before Juda left Taos to begin the smuggling venture which led to his conviction, he had paid either the full $150,000 (according to Juda) or $140,000 (according to the government). The developer retained legal title to the property.

On June 9, 1992, Assistant U.S. Attorney (AUSA) Stephen Kotz of the United States Attorney's Office for the District of New Mexico obtained a warrant from the district court, authorizing seizure of the property on the grounds that it was used in connection with drug offenses, money laundering, and transactions in property derived from unlawful activity.[1]  Instead of having the warrant executed, however, Kotz entered into an agreement with the developer, under which the developer would sell the property to another buyer for $150,000 and give the proceeds to the government.

---

[1]    The government also obtained a warrant for 2.1671 acres of unimproved land owned by Juda. After executing the warrant and filing a complaint, it decided not to proceed with forfeiture. The 2.1671 acre lot is not involved in this appeal.

On August 5, 1992, a New Mexico title and abstract company sent a $150,000 check to the United States Marshals Service. Juda was not notified of the warrant, the agreement, the sale of the property, or the seizure of the check. On December 9, 1992, the district court granted Kotz's motion to seal the seizure warrant and supporting affidavit. The check for $150,000 remained with the Marshals Service until February 1994.

In the meantime, Juda began a series of inquiries and requests under the Freedom of Information Act (FOIA) about the seizure of his property, directed to the Office of the United States Attorney in the Northern District of California, where he was being prosecuted; the Office of the United States Attorney in the District of New Mexico, where his property was located; the Department of Justice in Washington, D.C.; and the Customs Service. He wrote his initial inquiry in December 1993, and first received a response in April 1994.

In February 1994, AUSA Kotz met with Customs agents and advised that he would not pursue judicial forfeiture of the check proceeds. [2] The check was converted to a treasury check for $150,000 and sent to the Customs Service to begin administrative forfeiture proceedings. On April 8, 1994, the Customs

---

[2]   A July 29, 1994, letter to Juda from Leonard S. Walton, Acting Assistant Commissioner, Office of Enforcement, Department of the Treasury states that the decision was based on "the inadvertent omission of serving prior notice to [Juda] of the seizure of these proceeds." Appellant's Addendum at 64(b).

Service sent Juda a notice of seizure with intent to forfeit the treasury check. The letter stated that the check had been seized March 4, 1994, and that it was subject to forfeiture as the proceeds of unlawful activity, under 18 U.S.C. §§ 981, 1956, 1957. An enclosure provided general information on how to oppose the forfeiture.

Juda responded with letters acknowledging an interest in real property of approximately the same value as the treasury check, but disclaiming an interest in the check itself. A notice of forfeiture was sent to Juda on May 6, 1994. The check was declared administratively forfeited on June 26, 1994.

### B.    Personal Property

Juda's personal property, seized during the summer of 1991, included: (1) a 1990 Jeep Cherokee; (2) $40,000 from a Santa Fe bank safe deposit box; (3) $50,000 from a Taos safe deposit box; (4) $19,830 from an Albuquerque bank account; (5) $19,882 from a Taos bank account; (6) $8,753 from an Albuquerque bank account; and (7) miscellaneous items valued at $1,134 from a storage locker. The Customs Service forfeited each item separately, and attempted to provide notice by certified mail to the address in Santa Fe which Juda had provided on a 1989 passport application. [3] As some federal agents were aware, Juda had

---

[3]    Apparently through a clerical error, some notices listed Taos instead of

(continued...)

moved to Taos some two years earlier and, in any event, he was in federal detention in California at the time of the mailings.

The notices were sent on August 13, 1991 (for the bank account seizures), August 15, 1991 (for the safe deposit box seizures), August 16, 1991 (for the Jeep Cherokee), and October 8, 1991 (for the miscellaneous property). The United States Post Office in Santa Fe forwarded the notices to Taos, where Juda's tenant accepted many of them. The tenant brought Juda's mail to another friend, who transmitted the mail received as of August 13 to Mark Donatelli, an attorney retained by Juda's criminal attorney, Joseph Vodnoy. Donatelli sent this mail by federal express to Vodnoy in California. The transmittal letter, dated August 13, 1991, noted that there was "only one notice of seizure" included in the packet. R., Vol. I, Doc. 12 at 74. Sometime in September 1991, Vodnoy visited Juda in prison, bringing the mail sent by Donatelli on August 13, and offering advice on forfeiture proceedings.

The Customs Service sent notices of forfeiture September 12-18 and November 12, 1991. Most of these notices were returned as undeliverable.

---

[3](...continued)
Santa Fe as the city designation, but had the correct zip code.

The personal property was declared administratively forfeited October 27 and December 13, 1991. [4]

## III. The Civil Actions

### A. Case No. 97-2192

Acting pro se and in forma pauperis, Juda filed motions under Fed. R. Crim. P. 41(e) in the United States District Court for the Northern District of California, to recover the forfeited real and personal property. Later, he filed an action against prosecutors, Customs Service agents, agents of the Internal Revenue Service, and other federal officials, claiming entitlement to damages under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), for an allegedly illegal taking of his property and conspiracies involving prosecutors, Customs Service agents, Internal Revenue Service agents, and respondents to his FOIA requests. The court transferred the actions to the United States District Court for the District of New Mexico.

In New Mexico, the district court consolidated Juda's filings and assigned the matter to a magistrate judge for review under 28 U.S.C. § 1915(e)(2)(B), which provides for sua sponte dismissal of an in forma pauperis action that is

---

[4]     Initially, Juda alleged that the Customs Service failed to publish notice of administrative forfeiture of the personal properties. He has withdrawn the allegation.

frivolous, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant with immunity from such relief. [5] The magistrate judge issued a report recommending dismissal of (1) the motion for return of the real property, on the grounds that Juda had lacked legal title to the property and had failed to contest the administrative forfeiture of the $150,000 check, and (2) the <u>Bivens</u> action, on the grounds that no constitutional violation had taken place, that the prosecutors were immune from liability, and that Juda had only vague allegations to support his conspiracy claims against the other defendants. On the personal property claim, the magistrate judge determined that there was insufficient evidence to decide whether Juda had received adequate notice of the administrative forfeiture and directed the government to submit relevant documentation.

Juda filed objections to the dismissal recommendations, a motion to amend the <u>Bivens</u> action to include IRS agents as participants in the conspiracy, and argument on the personal property issues. The government submitted a response and documents relating to notice.

In a second analysis, the magistrate judge concluded that Juda's objections were without merit and that the proposed amendment to the <u>Bivens</u> action did not

---

[5] The magistrate judge cited § 1915(d), which has been revised and re-enacted as § 1915(e)(2)(B).

affect his earlier decision. On the adequacy of notice issue, he determined that Juda had received actual notice because his "friend forwarded the notices to [his] attorneys, who in turn apprised [him] of the impending forfeitures." R., Vol. I, Doc. 16 at 9. The magistrate judge recommended dismissal of all claims with prejudice and denial of the motion to amend. The district court reviewed Juda's objections de novo, adopted the magistrate judge's findings and conclusions, and dismissed the case.

**B.    Case No. 97-2326**

Juda filed a second  Bivens  action in the District Court for the District of New Mexico, asserting that Customs Service agents violated his constitutional rights by conspiring to deprive him of adequate notice of forfeiture proceedings, and that, in retaliation for his opposition to the forfeitures, I.R.S. agents conspired with officials of the Department of Justice. The district court dismissed the complaint under 28 U.S.C. § 1915(e)(2)(B).

## DISCUSSION

**I.    Standard of Review**

Generally, we review a district court's denial of a motion for return of property under Fed. R. Crim. P. 41(e) for an abuse of discretion. United States v. Deninno , 103 F.3d 82, 84 (10th Cir. 1996). However, we apply a de novo

standard to the ultimate conclusion of whether a claimant's due process rights have been violated, see United States v. One Parcel of Real Property Described as Lot 41, Berryhill Farm Estates, 128 F.3d 1386, 1391 (10th Cir. 1997), and a clearly erroneous standard to findings of fact, United States v. Francis, 646 F.2d 251, 262 (6th Cir. 1981). We construe the pleadings and papers of a pro se appellant liberally. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

## II.    Analysis

"Proceedings surrounding the motion for return of property seized in a criminal case are civil in nature," United States v. Maez, 915 F.2d 1466, 1468 (10th Cir. 1990), and based on equitable principles, see United States v. Madden, 95 F.3d 38, 40 (10th Cir. 1996).

> [W]here the property sought to be returned has been administratively forfeited, the Court should not exercise Rule 41(e) jurisdiction if the movant has failed to challenge the forfeiture through the appropriate administrative and judicial procedures. However, federal question jurisdiction pursuant to 28 U.S.C. § 1331 is available for the limited purpose of considering collateral due process attacks; that is, deciding whether the forfeiture offended due process rights. If an administrative forfeiture does not have any procedural defects, other challenges to the forfeiture, which could have been addressed under the statutory and regulatory procedures, must be considered waived.

Deninno, 103 F.3d at 84-85 (citations and parentheticals omitted).

A.    Case No. 97-2192

1.    Real property

a.    Seizure

In United States v. James Daniel Good Real Property, 510 U.S. 43, 62 (1993), the Supreme Court held that "[u]nless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property subject to civil forfeiture." [6] The Court reasoned that the immobility of real property ordinarily eliminates grounds for dispensing with preseizure proceedings. Id. at 57.

To unravel the issues relating to Juda's real property claims, we must begin with an analysis of his ownership interest in 1992, when AUSA Kotz and the developer agreed on the sale of the house. The magistrate judge accepted the government's argument that no preseizure hearing was required because the developer, not Juda, had legal title to the property. However, under the doctrine of equitable conversion applied in New Mexico, a person who has contracted to purchase real property is "treated as the owner of the land and holds an interest

_____

[6]    The rule announced in Good applies retroactively to all cases not finally decided at the time of the decision. See, e.g., United States v. 2751 Peyton Woods Trail, 66 F.3d 1164, 1166 n.2 (11th Cir. 1995); United States v. All Assets & Equip. of West Side Bldg. Corp., 58 F.3d 1181, 1191 (7th Cir. 1995).

-12-

in real estate . . . . [T]he *Vendor* holds the bare legal title as a trustee for the vendee." Marks v. City of Tucumcari, 595 P.2d 1199, 1200 (N.M. 1979).

Accordingly, Juda was the owner of real property, and, absent exigent circumstances, was entitled to notice and a hearing before seizure. The unorthodox agreement between AUSA Kotz and the developer deprived Juda of the "valuable rights of ownership, including the right of sale, the right of occupancy, the right to unrestricted use and enjoyment, and the right to receive rents." Good, 510 U.S. at 54. The resulting sale amounted to a governmental seizure, without notice to Juda and without any showing of exigent circumstances. Plainly, the seizure violated Juda's due process rights and, as discussed below, Juda is entitled to an equitable remedy.[7]

---

[7] The government, citing the case of Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996), asserts that Juda waived the due process argument, in that he made it for the first time in objecting to the report of the magistrate judge. As the government must be fully aware, the Marshall holding, made in the context of an administrative agency review, has no application here. The magistrate judge was charged with reviewing a pro se, in forma pauperis complaint for dismissal under 28 U.S.C. § 1915(e)(2)(B). An objection to the magistrate judge's report presented Juda's first opportunity to provide legal argument. See Fed. R. Civ. P. 8(a)(2) (providing that a pleading must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief").

### b. Forfeiture

"The illegality of the seizure, however, does not necessarily invalidate the forfeiture." United States v. 51 Pieces of Real Property, Roswell, N.M., 17 F.3d 1306, 1315 (10th Cir. 1994). To contest the forfeiture itself, the claimant must demonstrate a procedural fault in the forfeiture action and prejudice affecting his substantial rights. See Deninno, 103 F.3d at 85-86. Here, Juda argues that there were two procedural defects: (a) lack of adequate notice, and (b) an almost two-year delay between the seizure of the real property and the forfeiture proceedings.

"[T]he government is required to give notice to all persons who have or claim an interest in real property being administratively forfeited." United States v. Clark, 84 F.3d 378, 380 (10th Cir. 1996). Due process considerations compel "'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Id. (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).

Juda concedes that he received timely notice of the forfeiture, but claims that the content of the notice was deficient, in that it failed to specify the source of the check or detail the illegal acts authorizing forfeiture. It is apparent from the record that Juda was aware that the check represented the proceeds from the sale of his real property. Moreover, we have found no case law supporting Juda's

-14-

suggestion that we require a particularized narrative of allegedly illegal acts.  We decline to adopt Juda's proposal.  After a review of the record, we agree with the magistrate judge's finding that Juda received constitutionally adequate notice.

Juda's second attack on the forfeiture proceeding relates to the delay of almost two years between seizure and forfeiture.  An unreasonable delay in instituting a forfeiture proceeding may constitute a violation of due process.  See United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in U.S. Currency , 461 U.S. 555, 564-65 (1983).  In determining whether the government brought the proceeding within a reasonable time, courts are to consider the "length of delay, the reason for the delay, the [claimant's] assertion of his right, and prejudice to the [claimant]."     Id. at 564. [8]

To some extent, the length of the delay is a "'triggering mechanism'" requiring an inquiry into the remaining factors.     Id. at 565 (quoting   Barker v. Wingo , 407 U.S. 514, 530 (1972)).  In     $8,850 , an eighteen-month delay was sufficient to trigger the full inquiry.     See id.; see also  United States v.

_____

[8]      We note that, after weighing these factors, the Court allowed a delay of eighteen months between seizure and forfeiture.     See $8,850 , 461 U.S. at 568-70 (no due process violation in delay due to pending criminal proceedings, lack of evidence that the claimant desired early commencement of forfeiture, and absence of a showing that the delay prejudiced claimant's ability to defend against the forfeiture).   See also  United States v. $292,888.04 in U.S. Currency     , 54 F.3d 564, 567 (9th Cir. 1995) (thirty-month delay permissible);     United States v. United States Currency in the Amount of $228,536.00     , 895 F.2d 908, 917 (2d Cir. 1990) (almost four-year delay permissible).

<u>Forty-Seven Thousand Nine Hundred Eighty Dollars ($47,980) in Canadian Currency</u>, 804 F.2d 1085, 1088-89 (9th Cir. 1986) (fourteen-month delay sufficient to trigger inquiry).  [9]  Here, the almost two-year gap between seizure and forfeiture requires consideration of the remaining factors.  The magistrate judge, however, did not address the delay issue.  We therefore remand to the district court for further proceedings in order to make findings on the interrelated factors of the length of the delay, the reasons for the delay, and resulting prejudice to the plaintiff.

### c.    Remedy

Because we cannot determine whether the delay amounted to a due process violation, we do not reach the issue of what remedy, if any, is appropriate for the alleged procedural defect in the forfeiture proceeding.    See <u>$8,850</u>, 461 U.S. at 560 n.8 (declining to reach issue where a judicial forfeiture was still pending, but no due process violation was present).  For the preseizure infringement, the scope of the remedy is related to the district court's decision on the validity of the forfeiture.  The government should be required to "account for the profits or rent

---

[9]    We reject the government's disingenuous argument that there was no delay because the Customs Service sent a seizure notice on April 8, 1994, and completed administrative forfeiture proceedings two months later.  Although the Customs Service may have acted promptly after it received the check from the Marshals Service, Juda had been stripped of his property rights by the 1992 sale.

which it denied the claimant during the period of illegal seizure." United States v. Marsh, 105 F.3d 927, 931 (4th Cir. 1997) (citing 51 Pieces of Real Property, Roswell, N.M., 17 F.3d at 1316)) Accordingly, the district court must first determine the length of the period of illegal seizure, then determine the appropriate amount of profits or rent.

### 2.    Personal property

Juda contends that his personal property should be returned because the government failed to send him notice of the forfeitures. We have explained that if "the government can reasonably ascertain the name and address of an interested party, due process requires the government to send '[n]otice by mail or other means as certain to ensure actual notice.'" United States v. Clark, 84 F.3d 378, 380 (10th Cir. 1996) (quoting Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 800 (1983)). "When the government is aware that an interested party is incarcerated, due process requires the government to make an attempt to serve him with notice in prison." Id. at 381. However, there is no need to overturn an administrative forfeiture for a claimant who had actual notice of forfeiture proceedings, notwithstanding the government's failure to make reasonable efforts to provide notice. See United States v. Rodgers, 108 F.3d 1247, 1254-55 (10th Cir. 1997) (citing Sarit v. United States Drug Enforcement Admin., 987 F.2d 10, 15 n.3 (1st Cir 1993)).

Here, the magistrate judge acknowledged that the government should have sent Juda notice of the forfeiture proceedings in prison, as required by Clark. He found, however, that Juda had received actual notice through the mailings accepted by his tenant and friend on or before August 13, 1991, taken to attorney Donatelli, sent to attorney Vodnoy, and given to Juda during Vodnoy's prison visit in September. This finding of fact is clearly erroneous. The government's records show that, as of August 13, when the relay began, only one notice of seizure had been mailed. This is confirmed in the transmittal letter from Donatelli to Juda, which notes the enclosure of only one notice. Vodnoy did not receive a complete set of notices to hand off to Juda.

Although it is certainly conceivable that Juda received actual notice of the forfeitures through some other channel of communication, there is no such indication in the record. On remand, the district court is to hold further proceedings in order to make findings of fact on Juda's knowledge of the pending forfeitures before their completion. If necessary, it may proceed to evaluate the merits of Juda's arguments as to why the property is not subject to forfeiture. It would serve no purpose to upset the forfeitures for procedural faults if Juda has no basis for return of the property. See Deninno, 103 F.3d at 86.

### 3. **Bivens action**

In his Bivens claim, Juda accuses AUSA Kotz, the United States Attorney for the District of New Mexico, prosecutors in the California criminal action, and agents of the Customs Service of illegally taking his real property, and participation in a conspiracy with the Department of Justice officials and Internal Revenue Service agents. The district court correctly dismissed the entire claim.

The prosecutor defendants are covered by absolute immunity from civil liability when functioning as advocates in judicial proceedings, see Buckley v. Fitzsimmons, 509 U.S. 259, 269-70 (1993), and qualified immunity when functioning as administrative or investigative officers, see id. at 273. Here, these defendants are entitled to absolute immunity in connection with initiating the criminal action, filing the seizure warrant, and advising on criminal and judicial or administrative forfeiture matters. The California prosecutors and the United States Attorney for the District of New Mexico engaged solely in this type of activity and are absolutely immune from liability to Juda. AUSA Kotz is also entitled to absolute immunity in performance of these functions.

Additionally, Kotz entered into an extrajudicial agreement with the developer for the seizure of Juda's real property interest, without providing Juda with notice and an opportunity to be heard. For this action, absolute immunity does not apply, but he is shielded by qualified immunity "insofar as [his] conduct

-19-

[did] not violate clearly established statutory or constitutional rights." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Until 1993, when the Supreme Court explained the extent of process due to owners upon seizure of their real property, see Good, 510 U.S. 43, there was no controlling case law on the issue. Kotz made the agreement in July 1992. He is therefore entitled to qualified immunity from liability for his involvement in the seizure.

As to the other defendants, Juda failed to provide anything more than conclusory allegations of illegal conspiracy. The magistrate judge correctly determined that these allegations are insufficient to withstand review under 28 U.S.C. § 1915(e)(2)(B). See Boddie v. Schneider, 105 F.3d 857, 862 (2d Cir. 1997) ("'[A] complaint containing only vague, conclusory, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.'"); see also Northington v. Jackson, 973 F.2d 1518, 1521 (10th Cir. 1992) (holding that although a court should construe a pro se plaintiff's complaint liberally, "the court should not assume the role of advocate, and should dismiss claims which are supported only by vague and conclusory allegations"). We affirm the dismissal of the Bivens claim.

**B.     Case No. 97-2326**

On appeal, Juda argues that the district court erred in dismissing this Bivens action, in which he makes two claims of conspiracy by federal officials. First, Juda asserts that Customs Service agents conspired to deprive him of notice that his personal property was subject to forfeiture. These allegations, made against defendants Holler, Hughan, Luar, Alfaro, Payan, Fuentes, and the Doe defendants, are identical to those made against defendant Holler and the Doe defendants in Case No. 97-2192. Second, Juda alleges that, in retaliation for challenging the forfeitures, Internal Revenue Service agents sent tax notices and imposed a lien pursuant to a conspiracy with Department of Justice officials. Case No. 97-2192 included a similar allegation.

As we have previously explained, Juda's bald allegations of a conspiracy to deprive him of his constitutional rights cannot avoid sua sponte dismissal pursuant to § 1915(e)(2)(B). After reviewing the record and submissions, we determine that dismissal was the appropriate disposition of this action.       See Boddie, 105 F.3d at 862;   Northington, 973 F.2d at 1521. [10]

---

[10]     The district court determined that the claims are barred by res judicata, as to defendants named in the earlier action, and collateral estoppel, as to newly-named defendants. Because we determine that Juda's     Bivens claims are vague, conclusory, and general, we need not reach the merits of this ruling.

## CONCLUSION

For the reasons stated above, we REVERSE the judgment in case No. 97-2192 and REMAND to the district court for further proceedings consistent with this order and judgment on Juda's claims of due process violations in the seizure and forfeiture of his real property and the forfeiture of his personal property. After considering all of Juda's contentions, we AFFIRM the district court's ruling on all other aspects.

We AFFIRM the judgment in case No. 97-2326 in its entirety. Juda's motion to reconsider our denial of his motion to consolidate the appeals is DENIED. The motion for change of venue is DENIED.

Entered for the Court

Robert H. Henry
Circuit Judge

-22-