**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 98-11341

_____


STEVEN J. KADONSKY,

                        Plaintiff-Counter Defendant-Appellant,

versus


UNITED STATES OF AMERICA; DRUG ENFORCEMENT
ADMINISTRATION, UNKNOWN MEMBERS OF NARCOTICS
TASK FORCE AT DALLAS/FORT WORTH AIRPORT (USA);
MARK JUVRUD, Special Agent; RICK SMITH, Special Agent;
OTHER UNKNOWN AGENTS OF THE DRUG ENFORCEMENT
ADMINISTRATION,

                        Defendants-Counter   Claimants-
                        Appellees.


Appeal from the United States District Court
For the Northern District of Texas

July 10, 2000

Before EMILIO M. GARZA, DeMOSS, and STEWART,[*] Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Steven Kadonsky appeals from a magistrate judge's grant of summary judgment on his claim

for the return of three sums of money which were administratively forfeited to the defendants

_____

[*]        Judge Stewart concurs in the judgment only.

(collectively "the government") in 1991.  A panel of this court dismissed Kadonsky's appeal for lack of jurisdiction. *See Kadonsky v. United States*, No. 98-11341 (5th Cir. Aug. 27, 1999).  On rehearing, we find that we have jurisdiction over this appeal, vacate our prior opinion, and affirm.

**I.**

In 1991, after an acquaintance informed him that a substantial sum of marijuana was being offered for sale in Dallas, Steven Kadonsky flew to Dallas and attempted to purchase the drugs. When he arrived, Kadonsky tendered $125,000 to a seller but was told that an additional $50,000 was needed to complete the transaction.  Kadonsky agreed to have an associate bring the $50,000 to Dallas that night and arranged the meeting.  Shortly thereafter, Kadonsky was arrested.  His associate, found to have $50,893 on his person, was arrested at the Dallas airport that evening.  After a full investigation, Kadonsky pled guilty to conspiracy to distribute and to possess with the intent to distribute marijuana in 1992.  His associate, apparently an unknowing carrier, was released.

In November 1991, shortly thereafter Kadonsky's arrest, the federal government initiated administrative forfeiture proceedings against three distinct sums of money: (1) $178,020 of the funds tendered for the drug transaction, $125,000 of which had been provided by Kadonsky (the "drug funds"), (2) the $50,893 found on the person of Kadonsky's associate when he was arrested at the Dallas airport (the "associate funds"), and (3) the $1,822 found on Kadonsky's person upon his arrest (the "personal funds").  Later, in 1994, the government seized $51,400 from a storage locker which DEA agents learned about from Kadonsky (the "locker funds") and initiated administrative forfeiture proceedings against this sum.  Kadonsky received no notice of the forfeiture proceedings on the drug funds, associate funds, or locker funds.  When no claims to the sums of money were filed, the sums were immediately forfeited to the government.

On October 29, 1996, Kadonsky filed suit in the district court seeking the return of all four sums of money seized in connection with his arrest: the drug funds, associate funds, personal funds, and locker funds. He claimed to be the owner of all four sums and to have been denied due process by the government's failure to notify him of the administrative forfeiture proceedings. A magistrate judge held that the government's failure to provide adequate notice to Kadonsky violated his due process rights and, accordingly, vacated the forfeitures of the drug funds, the associate funds, and the personal funds. The judge held, however, that Kadonsky lacked standing to challenge the seizure of the locker funds because he had not sufficiently demonstrated an ownership interest in this sum. After the judge directed the parties to submit briefs "identifying any remaining issues," the government timely filed a compulsory counterclaim for recoupment, asserting that Kadonsky had no right to receive the funds because they had been used or intended for drug transactions.

In his brief to the court, Kadonsky argued that, because the earlier forfeiture order had been declared void and the statute of limitations had run on beginning a new forfeiture proceeding, the court lacked jurisdiction to address the merits of the government's forfeiture arguments. Accordingly, Kadonsky argued, the only proper end to the case was to return the money to him immediately. The court held, however, that although the statute of limitations barred the government from reinstituting administrative forfeiture procedures, the court had jurisdiction to consider the merits of the forfeiture)) in essence, that this was not a new forfeiture proceeding which would be barred by limitations but rather a continuation of the earlier proceeding. *See Kadonsky v. United States*, No. CA-3:96-CV-2969-BC, 1998 WL 119531, at *1, *2-*4 (N.D. Tex. Mar. 6, 1998).

After cross-motions for summary judgment, the magistrate determined that the government had made the requisite showing that the drug funds and the associate funds had been used to facilitate

-3-

a drug transaction. However, the court held that the government had not shown sufficient proof that the personal funds were so used. Accordingly, the court granted summary judgment in part to the government (on the drug and associate funds) and in part to Kadonsky (on the personal funds). Kadonsky appeals.[1]

## II.

Initially, a panel of this court dismissed this appeal for want of jurisdiction. *See Kadonsky v. United States*, No. 98-11341 (5th Cir. Aug. 27, 1999). We reasoned that while the government had signed the form consenting to have a magistrate judge decide the matter pursuant to 28 U.S.C. § 636 (allowing magistrate judges to conduct all proceedings in a case "[u]pon the consent of the parties"), Kadonsky had not. Accordingly, we held that the magistrate judge lacked jurisdiction to enter judgment in the case, and her order was not a final and appealable one.

Shortly after our opinion was issued, Kadonsky filed a motion for rehearing pursuant to Fed. R. App. P. 40. Kadonsky asserted that he had orally consented to have a magistrate judge decide the matter in a conversation with the United States Attorney before the magistrate began the proceedings, and that he had also consented in writing by his agreement to a "joint status report" before the magistrate judge ruled on the motions for summary judgment. We granted rehearing. After further consideration, we agree with both parties that Kadonsky sufficiently consented to magistrate jurisdiction. Kadonsky did not sign the form consent commonly used and officially recognized by Fed. R. Civ. P. 73, but he did sign a document evincing his willingness to proceed before a magistrate judge. Rule 73, while conveniently providing a form to show consent, does not mandate that any

---

[1] The government does not appeal the magistrate's determination that the personal funds were not proven to be used in a criminal act and, accordingly, needed to be returned to Kadonsky.

-4-

particular form be used; rather, it merely requires that the parties "execute and file a joint form of consent or separate forms of consent." Fed. R. Civ. P. 73(a). The "joint status report," therefore, sufficiently "safeguard[ed] the voluntariness of the consent required under § 636(c)." *United States v. Muhammad*, 165 F.3d 327, 331 (5th Cir.) (finding separate consent forms filed by each party sufficient to satisfy the consent requirement), *cert. denied* 119 S. Ct. 1795 (1999). Accordingly, the magistrate judge had jurisdiction to hear and render judgment in this case, and we have jurisdiction to review the final judgment entered. We thus vacate our earlier opinion and proceed to the merits of the case.

## III.

Federal law authorizes the civil forfeiture of funds which are the proceeds of drug transactions. *See* 21 U.S.C. § 881(a)(6). The government must begin forfeiture proceedings within five years after it learns of the alleged offense. *See* 19 U.S.C. § 1621. If the government seizes certain property valued at $500,000 or less or, as in this case, "any monetary instrument," the Drug Enforcement Agency (DEA) can use an administrative forfeiture procedure identified in the customs laws. *See* 19 U.S.C. § 1607(a). That procedure, conducted wholly outside the judicial system, requires the DEA merely to publish notice of the administrative forfeiture and send notice to "each party who appears to have an interest in the seized article." *Id.*; *see also Barrera-Montenegro v. United States and Drug Enforcement Admin.*, 74 F.3d 657, 660 (5th Cir. 1996).

Those who receive the required notice of forfeiture have twenty days to file a claim to the property. *See* 19 U.S.C. § 1608. If no such claim is filed, the property is forfeited to the government. *See* 19 U.S.C. § 1609; *Barrera-Montenegro*, 74 F.3d at 660 ("If a party fails to respond within the prescribed time period, the property is summarily forfeited."). However, filing a claim to the seized

-5-

property stops the administrative forfeiture process, and the government must then institute judicial forfeiture proceedings, in which the government will have to show probable cause for the forfeiture. *See* 19 U.S.C. § 1615. Once probable cause is shown, the claimant must prove that the property is not the proceeds of a drug transaction. *See id.*

In this case, with respect to each set of funds, the government filed the requisite notice in the Federal Register and informed those it believed had an interest in the seized funds; when there was no response within twenty days, the funds were forfeited to the government by default. However, Kadonsky received no notice of the forfeiture of the drug funds, the associate funds, the locker funds, or the personal funds. Accordingly, the district court held that since Kadonsky was a "party who appears to have an interest in the seized article," 19 U.S.C. 1607(a), he was deprived of due process by the government's failure to notify him in advance of the forfeiture.[2]

We have previously held that when those with an interest in forfeited funds failed to receive constitutionally adequate notice, the administrative forfeiture is void and must be vacated. *See Barrera-Montenegro*, 74 F.3d at 660-61; *Armendariz-Mata v. U.S. Dep't of Justice, Drug*

---

[2] On appeal, the government concedes that Kadonsky fulfills the statutory requirements to receive notice. *See* Appellee's Br. at 15 ("The trial court properly determined that Kadonsky established an ownership interest in the [drug funds], the [associate funds], and the [personal funds]."). Accordingly, we must assume that Kadonsky satisfied the § 1607(a) standard and was entitled to notice. We note, however, that on the record before us, it is not clear whether Kadonsky was merely a carrier of drug money owned by others or a middle man. While we have recognized in the standing context that "ownership" of seized property "should be broadly interpreted to include any person with a recognizable legal or equitable interest in the property seized," *United States v. $38,670*, 950 F.2d 1108, 1111-12 (5th Cir. 1992), we believe that mere possession of an article in and of itself is insufficient to render an individual one "who appears to have an interest in the seized article." *See United States v. One 18th Century Colombian Monstrance*, 802 F.2d 837, 383 (5th Cir. 1986) ("[M]ere physical possession is not sufficient to confer standing to contest forfeiture."); *cf. Trestman v. United States*, 189 F.3d 462, 1999 WL 506098, at *1 (2d Cir. 1999) ("Although a naked claim of possession is not enough to establish standing, all that is generally needed is some indication that the claimant is in fact a possessor with a right or interest of proprietorship.") (citation omitted).

*Enforcement Admin.*, 82 F.3d 679, 682-83 (5th Cir. 1996). In both *Barrera-Montenegro* and *Armendariz-Mata*, we held that the remedy for the constitutionally invalid notice was to void and vacate the initial forfeiture proceedings and remand to the district court for new forfeiture proceedings. *See Barrera-Montenegro*, 74 F.3d at 661 ("We therefore hold the order of forfeiture void. The case is remanded for renewed administrative proceedings unless a judicial proceeding is commenced pursuant to 19 U.S.C. § 1608."); *Armendariz-Mata*, 82 F.3d at 683 ("This case is remanded with instructions to vacate DEA's administrative forfeiture for lack of adequate notice.").[3] However, neither *Barrera-Montenegro* nor *Armendariz-Mata* involved a situation where the petitioner argued that the five-year statute of limitations on the government's instituting forfeiture proceedings had run before we declared the initial proceedings void. Here, Kadonsky argues that because the statute of limitations on the government beginning forfeiture proceedings had run, the district court incorrectly considered the merits of the government's forfeiture argument.[4]

Though we have not addressed this particular question, four of our sister circuits have, and they have split evenly. In deciding to review the merits of the government's forfeiture claim notwithstanding the limitations problem, the magistrate followed the reasoning of *Boero v. Drug*

---

[3] Both *Armendariz-Mata* and *Barrera-Montenegro* involved situations where the government knew the individual had an interest in the property yet failed through gross negligence or deliberate obfuscation to notify them of the forfeiture proceedings. *See Armendariz-Mata*, 82 F.3d at 682-83 (voiding forfeiture when the government, knowing the individual was in jail, failed to follow up after their first attempt at notice was returned by the prison mail service); *Barrera-Montenegro*, 74 F.3d at 658-660 (voiding forfeiture when the government openly "misinformed and manipulated" the individual entitled to notice in an obvious attempt to avoid judicial proceedings). Here, by contrast, it appears that the government's failure to notify Kadonsky was based, at least initially, on a good faith belief that he did not "reasonably appear to have an interest in the property."

[4] Kadonsky does not contest the district court's evaluation of his claim to the drug funds or associate funds on the merits, nor does it appear that such an argument would be viable.

*Enforcement Admin.*, 111 F.3d 301, 304-307 (2d Cir. 1997), which was the only case available to her prior to judgment. There, the Second Circuit held that a claimant's remedy for inadequate notice was the "restor[ation of] his right to seek a hearing in the district court," *id.* at 307, rather than the immediate restitution of the forfeited funds. The court came to this conclusion despite the fact that the forfeiture hearing would occur more than five years after the government had seized the funds and would thus ordinarily be untimely. *Id.* The Sixth Circuit has since been persuaded by this reasoning, asserting that:

> Like the Second Circuit, we think that inadequate notices should be treated as voidable, not void, and that the proper remedy is simply to restore the right . . . to judicially contest the forfeiture and to put the Government to its proofs under a probable cause standard. Thus, the Government is not required to institute "new" forfeiture proceedings, and the applicable statute of limitations, § 1621, therefore has no bearing.

*United States v. Dusenbery*, 201 F.3d 763, 767-68 (6th Cir. 2000). In rejecting the claimant's claim for immediate restitution, the *Dusenbery* court noted that "a contrary ruling . . . might encourage some claimants with borderline notices and nothing to lose . . . [to wait until] the five-year statute of limitations has run [before challenging the notice given before their property was forfeited]." *Id.* at 768.

The Ninth and Tenth Circuits have disagreed.[5] In *Clymore v. United States*, 164 F.3d 569,

---

[5] Two other circuits have (in dicta) addressed the issue in a slightly different context and have both suggested that the government would be able to cure its void forfeiture orders only if the statute of limitations had not yet run. *See United States v. 2751 Peyton Woods Trail*, 66 F.3d 1164, 1166-67 (11th Cir. 1995) (holding that a constitutional violation voids a seizure and "requires dismissal of the forfeiture action, with leave to file a new action if the statute of limitations has not run"); *United States v. One Parcel of Real Property Located at 9638 Chicago Heights, St. Louis, Missouri*, 27 F.3d 327, 330 (8th Cir. 1994) ("Because the seizure was conducted pursuant to an invalid warrant, we must dismiss this forfeiture action. If statutory time constraints permit, however, the government is free to . . . commence the forfeiture proceedings anew.").

574 (10th Cir. 1999), the Tenth Circuit held that the statute of limitations should be strictly applied in these contexts, reasoning that "[w]here obvious statute of limitations problems exist, we think the offending forfeiture should be vacated and the statute of limitations allowed to operate." *Id.* Expressly disagreeing with the rationale of *Boero*, the *Clymore* court asserted that its conclusion was "required by our circuit precedent which holds that a forfeiture accomplished without adequate notice is void and must be vacated." *Id.*[6] The Ninth Circuit agreed, stressing that forfeitures "should be enforced only when within both letter and spirit of the law," and that the forfeiture statutes "impose no duty on a defendant to prevent the government from losing its rights through carelessness." *United States v. Marolf*, 173 F.3d 1213, 1217 (9th Cir. 1999).

As described above, the precedent of this circuit, like that which the *Clymore* court found dispositive, also holds that a forfeiture accomplished without adequate notice is void and must be vacated. *See Barrera-Montenegro*, 74 F.3d at 660-61; *Armendariz-Mata*, 82 F.3d at 682-83. Our past descriptions of the effects of a void judgment in other contexts lend further support for the argument that the statute of limitations should bar reinstigation of forfeiture suits in cases like the one at bar. *See Carter v. Fenner*, 136 F.3d 1000, 1006 (5th Cir. 1998) ("[A] void judgment is one which, from its inception, was a complete nullity and without legal effect.") (citing *United States v. Zima*,

---

[6]     The government argues that we should not follow *Clymore* because, *inter alia*, it is in conflict with an unpublished, non-precedential opinion from the same court. *See Juda v. Nerney*, 149 F.3d 1190, 1998 WL 317474 at *1, *6 (10th Cir. June 16, 1998) (unpublished). To the extent that the decisions conflicted, we note that the *Juda* court has since changed course and applied the *Clymore* rationale strictly. *See Juda v. Nerney*, No. 99-2070, 2000 WL 419823, at *1, *3 (10th Cir. April 17, 2000) ("Under the dictates of *Clymore*, we vacate the forfeitures of Juda's personal property and again remand the matter to the district court. On remand, the district court is to determine whether the government has a valid argument against the operation of the statute of limitations. If the government has no such argument, the forfeited personal property, or its monetary equivalent, should be returned to Juda.").

766 F.2d 1153, 1159 (7th Cir. 1985)); *In the Matter of Knight*, –F.3d–, 2000 WL 328339 at *1 (5th Cir. April 13, 2000) ("[A] void judgment is a nullity which can furnish no basis for any subsequent action.") (citing *Southern Trucking Serv. Inc. v. Miss. Sand and Gravel*, 483 So.2d 321 (Miss. 1986)). Based on this precedent, it is difficult to conclude that the government can reinstigate forfeiture proceedings when the old proceeding is void and any new one is barred by limitations.

However, we also agree that the rule identified by the Second and Sixth Circuits is far more sensible as a policy matter. The case at bar accurately describes the consequences of the contrary rule. In 1991, the government published notice of its institution of forfeiture proceedings on the various funds; it also specifically notified those individuals it believed to have a genuine interest in the funds, but did not notify Kadonsky because it did believe he had such an interest.[7] Assuming (as it argues) that the government made this decision erroneously but in good faith, the consequences of this error are enormous. Because Kadonsky waited (for whatever reason) until the statute of limitations on the government's reinstituting forfeiture proceedings had virtually lapsed before filing his suit, the government is effectively foreclosed from pursuing forfeiture regardless of the merits of Kadonsky's claims. In effect, even though Kadonsky admits the funds were used in drug transactions and that he has no legal right to them, the government will be unable to achieve forfeiture because Kadonsky waited until the limitations period was nearly over before filing suit claiming improper notice. Accordingly, under the rule adopted by the Tenth and Ninth Circuits, Kadonsky would be able to keep the funds used in the drug transactions for which he was imprisoned because the notice

---

[7] The government did attempt to notify Kadonsky of its seizure and administrative proceedings against the personal funds, which it (for good reason) believed Kadonsky had an interest in. However, the magistrate judge below held that because the notice did not reach Kadonsky and the government's attempts were constitutionally inadequate, that forfeiture was also void. On appeal, the government does not challenge this determination.

provided him was insufficient.

The inequitable nature of this remedy becomes even more apparent when considering the fact that though Kadonsky did not receive constitutionally sufficient notice of the forfeiture of the drug, associate, and locker funds, he had to have been aware they had been seized and forfeited. They had been removed from his or his associate's possession. The government argues that Kadonsky's failure to file his suit until two days before the five-year limitations period ended was calculated to avoid the fact that his legal claims completely lacked merit. We need not determine the reason for Kadonsky's long delay. It may have been strategic. Nonetheless, we recognize that should this strategy be vindicated, it is likely to be repeated by the many others who have no legal right to the funds seized from their criminal endeavors but received less than perfect notice of the forfeiture proceedings.

However, while the equities substantially favor the government's argument in this case, the law does not. Our cases unequivocally establish that constitutionally ineffective notice renders forfeiture orders void because the court lacked jurisdiction to enter them. *See Barrera-Montenegro*, 74 F.3d at 660-61; *Armendariz-Mata*, 82 F.3d at 682-83. Our precedent also limits district court jurisdiction over reviews of forfeiture orders to whether the forfeiture comported with constitutional due process guarantees. *See United States v. Schinnell*, 80 F.3d 1064, 1069 (5th Cir. 1996) ("Once the administrative forfeiture [i]s completed, the district court lack[s] jurisdiction to review the forfeiture except for failure to comply with procedural requirements or to comport with due process."). With the 1991 forfeiture order void, the statute of limitations would bar a new proceeding unless tolled. The statute of limitations, however, clearly states that forfeiture suits must be brought within five years from "the time when the alleged offense was discovered." 19 U.S.C. § 1621. The statute expressly provides for tolling in several specific circumstances: (1) when the delay was the

-11-

result of fraud, (2) when the person was absent from the United States during the five-year period, or (3) when the property was concealed or absent during the five-year period. *See* 19 U.S.C. § 1621(1)-(2). No such express tolling is provided for situations where the United States did not know of an individual's interest in the property, or where a timely forfeiture proceeding was declared void for constitutionally deficient notice. The government does not argue for equitable tolling.[8] Accordingly, our precedent dictates following the path laid by the Tenth and Ninth Circuits: the remedy for constitutionally insufficient notice in forfeiture proceedings is to void and vacate the original proceeding, and limitations may bar consideration of the government's forfeiture claim on the merits unless the government provides a rationale to equitably toll or otherwise not apply the statute. *See Clymore*, 164 F.3d at 574 ("[W]e think the offending forfeiture should be vacated and the statute of limitations allowed to operate, subject, of course, to any available government arguments against it.").

In this case, however, the government makes a saving argument. It claims that, since after the five-year statute of limitations had passed but during the pendency of Kadonsky's suit it raised a compulsory counterclaim for recoupment, it preserved its right to seek a review of the forfeiture

---

[8]    The government may have had a strong argument for equitable tolling. First, as described above, our past cases declaring that constitutionally inadequate notice rendered forfeiture orders void involved situations where the government deliberately misled or intentionally neglected to give notice; here, by contrast, it appears that the failure to give notice was in good faith and proper relative to the information the government had at the time the property was seized. *See infra* note 3. Second, as described above, it would clearly be inequitable to allow a strict application of the statute of limitations when such application would forbid the government from achieving forfeiture of funds that were clearly the product of drug transactions. *Cf. Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998) ("The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable."). Because the government fails to argue for equitable tolling in this case, we do not reach the question.

on the merits.[9]  Recoupment "allows a defendant to reduce the amount of a plaintiff's claim by asserting a claim against the plaintiff which arose out of the same transaction to arrive at a just and proper liability on the plaintiff's claim."  *In the Matter of Kosadnar*, 157 F.3d 1011, 1013-14 (5th Cir. 1998).  When asserted as a defense, defendants must prove that: (1) the plaintiff and defendant's claims arise from the same transaction, and (2) the plaintiff's action is timely.  *See In the Matter of Coxson*, 43 F.3d 189, 193 (5th Cir. 1995).  Kadonsky argues that the government's claim is more properly characterized as a claim for setoff than recoupment.  Setoff, a claim which the statute of limitations would bar, varies from recoupment in that while recoupment claims arise out of the same transaction "forming the basis of the plaintiff's claim," setoff claims "arise[] out of a transaction extrinsic to the plaintiff's claim."  *Gober*, 100 F.3d at 1207.

We believe that Kadonsky's claim that the government provided improper notice of forfeiture arises from the same transaction as the government's claim that the various funds are subject to forfeiture.  In the recoupment context, considering that it is an equitable claim, we have previously construed the term "transaction" broadly.  *See, e.g., Coxson*, 43 F.3d at 193.  However,

> There is no general standard governing whether events are part of the same or different transactions.  Given the equitable nature of the recoupment doctrine, courts have refrained from precisely defining the same-transaction standard, focusing instead on the facts and the equities of each case.

*Kosadnar*, 157 F.3d at 1015.  As described above, the equities of this case strongly favor viewing the government's claim as one for recoupment.  Recoupment is "an equitable doctrine designed to

---

[9] Counterclaims in the nature of recoupment filed after the statute of limitations has run are nonetheless timely if the suit prompting the counterclaim were timely.  *See Reiter v. Cooper*, 507 U.S. 258, 264, 113 S. Ct. 1213, 1218, 122 L. Ed. 2d 604, __ (1993) ("Recoupment claims are generally not barred by a statute of limitations so long as the main action is timely."); *In the Matter of Gober*, 100 F.3d 1195, 1207 (5th Cir. 1996) ("Defensive claims for recoupment are never subject to statutes of limitations as long as the plaintiff's action is timely.").

-13-

determine a just liability on a claim." *In the Matter of United States Abatement Corp.*, 79 F.3d 393, 399-400 (5th Cir. 1996). It would not be just and equitable to allow Kadonsky to retain illegally obtained drug money merely because of the government's procedural error. Allowing a claim for recoupment merely allows the government to make the argument that Kadonsky has no right to the forfeited funds; if the funds are truly his, he will receive them after a new hearing. Therefore, any equities in favor of Kadonsky which spawn from the government's failure to give him notice of forfeiture are satisfied by providing a forfeiture hearing in the district court.

As for the facts of this particular case, the transaction at issue is the government's seizure and institution of forfeiture proceedings against the various sums of money. Admittedly, Kadonsky's claim involves the forfeiture's procedural components, while the government's counterclaim involves the substance of the forfeiture. In light of the particular facts and equities of this case, however, we decline to limit the definition of "transaction" to include only the forfeiture's procedural components; rather, we hold that the government's arguments were not so extrinsic to Kadonsky's claim as to constitute a claim for setoff rather than recoupment.

As we hold that the government's counterclaim for recoupment was not barred by limitations, and the district court's evaluation on the merits (which Kadonsky does not dispute) responded directly to that claim, we affirm the lower court's judgment allowing the forfeiture of the drug and associate funds.

**IV.**

Finally, Kadonsky argues that the lower court erred in determining that he lacked standing to challenge the government's forfeiture of the locker funds. As we have previously held,

[T]he burden of establishing standing to contest forfeiture is on the claimant seeking

-14-

to come before the court. A claimant need not prove the merit of his underlying claim. He must, however, be able to show at least a facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy requirement and the prudential considerations defining and limiting the role of the court.

*United States v. $9,041,598.68*, 163 F.3d 238, 245 (5th Cir. 1998) (citations and internal quotations omitted). This is an issue of law, and our review is plenary. *Id.*

We have previously construed the relevant statutory language to mean that only "owners" have standing to contest a forfeiture proceeding, broadly interpreting the term "owner" to "include any person with a recognizable legal or equitable interest in the property seized." *United States v. $38,570 U.S. Currency*, 950 F.2d 1108, 1111-12 (5th Cir. 1992) (citing S. Rep. No. 225, 98th Cong., 2d. Sess. 215). However, while any person with a recognizable legal or equitable interest in property may have standing to challenge its forfeiture, "the claimant must come forth with some evidence of his ownership interest to establish standing to contest a forfeiture." *Id.* at 1112-13.

Kadonsky's unsupported assertion of ownership is insufficient to establish standing. *See id.* The only other evidence to which he points, the affidavit of an FBI agent who informed the DEA that Kadonsky might have been involved in the placement of the currency in the storage locker, is similarly insufficient. Accordingly, we hold that the lower court correctly determined that Kadonsky lacked standing to challenge the forfeiture of the locker funds.

## V.

Accordingly, we AFFIRM the judgment of the district court.

-15-