

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-10-2003

# Longenette v. Krusing

Precedential or Non-Precedential: Precedential

Docket 00-3690

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Longenette v. Krusing" (2003). *2003 Decisions.* Paper 693.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/693

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed March 7, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-3690

WILLIAM LONGENETTE,
                              Appellant

v.

PETER KRUSING;
WILLIAM E. PERRY, SPECIAL AGENT FBI;
FEDERAL BUREAU OF INVESTIGATION

On Appeal from the United States District Court
for the Western District of Pennsylvania
D.C. Civil Action No. 92-cv-00312E
(Honorable Maurice B. Cohill, Jr.)

Argued September 17, 2002

Before: BECKER, *Chief Judge*, SCIRICA
and McKEE, *Circuit Judges*

(Filed: March 7, 2003)

KEITH NOREIKA, ESQUIRE
 (ARGUED)
Covington & Burling
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

Attorney for Appellant

BONNIE R. SCHLUETER, ESQUIRE
PAUL E. SKIRTICH, ESQUIRE
 (ARGUED)
Office of United States Attorney
633 United States Post Office &
 Courthouse
Pittsburgh, Pennsylvania 15219

Attorney for Appellees

## OPINION OF THE COURT

SCIRICA, *Circuit Judge*:

This case involves an administrative forfeiture proceeding of a motor vehicle allegedly used in certain drug transactions. The pro se prisoner's claim of ownership was dismissed as untimely. At issue is whether to apply the prison mailbox rule.

## I.

On August 30, 1990, federal authorities arrested William Longenette on drug-related charges. One day later, special agents of the FBI seized his 1985 Dodge B250 Custom Van, under § 881 of the Controlled Substances Act. 21 U.S.C. § 881. The government initiated administrative forfeiture proceedings against Longenette's van on March 27, 1992, advising him to "file a claim of ownership and a bond . . . by May 12, 1992" to contest the forfeiture.[1] Longenette did not receive the initial notice immediately since it was mailed to an incorrect prison location. On April 16, Longenette claimed ownership of the van in a letter to the FBI. Longenette also asserted an inability to post the mandatory bond and requested an in forma pauperis declaration to provide in lieu of the bond.

The FBI mailed Longenette an in forma pauperis form on

---

1. In compliance with 19 U.S.C. § 1608, the government also published notice of the impending forfeiture in a local newspaper on April 13, 20, and 27.

April 17, responding to a separate request from Longenette's former attorney, who had received a copy of the initial notice. The FBI's letter accompanying the form provided a deadline extension and directed Longenette to "return" the form to the FBI by May 29. The record does not indicate when Longenette received the IFP form. On May 27, he handed the completed form to prison authorities for mailing to the FBI, but wrote the date of May 9 next to his signature. The FBI did not receive the form until June 2, four days after the May 29 deadline. On July 6, the FBI sent a letter to Longenette advising him that his bond was untimely and that the administrative forfeiture proceedings would continue.

On September 15, 1992, Longenette filed suit to contest the administrative forfeiture. On June 6, 1994, the District Court dismissed Longenette's claim based on lack of jurisdiction and insufficient service of process. On November 9, 1995, we reversed, finding jurisdiction on due process grounds, and remanded for further consideration. *Longenette v. Krusing et al*, No. 94-3321 (3d Cir. filed Aug. 25, 1995) (table). On September 26, 2000, after several delays in securing counsel for Longenette, the District Court granted the government's motion for summary judgment.[2] Longenette filed a timely appeal.[3]

2. Longenette claims government authorities in West Virginia stole up to $13,000 from him when seizing and judicially forfeiting his cash assets. Since the United States District Court for the District of West Virginia presided over those forfeiture proceedings, the District Court here correctly held this issue was not properly before it.

3. We have jurisdiction to review administrative forfeitures for constitutional infringements or procedural errors. *United States v. McGlory*, 202 F.3d 664, 670 (3d Cir. 2000) (en banc) ("The federal courts have universally upheld jurisdiction to review whether an administrative forfeiture satisfied statutory and due process requirements."); *see also In re One Jeep 1987 Wrangler Auto.*, 972 F.2d 472, 480 (2d Cir. 1992). We have jurisdiction to consider the grant of summary judgment under 28 U.S.C. § 1291.

## II.

## A.

The Controlled Substances Act permits seizures and subsequent forfeitures of motor vehicles used to facilitate the transportation, sale, receipt, possession, or concealment of illegal drugs. 21 U.S.C. § 881(a). For seized property valued less than $500,000, the Act and accompanying regulations authorize civil forfeiture through an administrative action rather than through a judicial proceeding. *Id.*; *see also* 21 C.F.R. § 1316.77(b).

An administrative forfeiture proceeding requires the FBI or DEA, whichever is relevant, to notify any person with an interest in the property. 21 C.F.R. § 1316.77. The government accomplishes notification by sending a letter via certified mail to the person's last known address and by advertising a notice of forfeiture in a local publication on three separate occasions. *See* 19 U.S.C. § 1607(a); 21 C.F.R. § 1316.75(a). Any person claiming ownership has twenty days in which to file a claim stating his interest "with the appropriate customs officer." 19 U.S.C. § 1608. The individual also must provide a bond "to the United States" to cover the costs and expenses of judicial proceedings. *Id.* Individuals who cannot afford to post a bond may file an in forma pauperis declaration. 19 C.F.R. § 162.47(e). Once an individual properly contests the administrative forfeiture, the matter automatically is forwarded to the courts for judicial proceedings.[4] 19 U.S.C. §§ 1608, 1610; 21 C.F.R. §§ 1316.76(b), 1316.78.

Here, the government initiated administrative forfeiture proceedings against Longenette's van on March 27, 1992. Longenette filed his ownership claim on April 16 and requested IFP status. By letter of April 17, the FBI

---

4. If an individual fails to contest an administrative forfeiture, he loses all recourse for judicial review of the administrative proceeding's merits. *See* 21 C.F.R. § 1316.77(b). His only opportunity to regain his property interest rests on a due process or procedural claim or on filing a petition for remission (pardon) with the administrative agency. 21 C.F.R. § 1316.80(a).

forwarded an IFP form to Longenette and provided a "return" deadline of May 29, 1992. Longenette submitted his completed IFP form to federal prison authorities on May 27, but the FBI did not receive the form until June 2. The timeliness of Longenette's submission, therefore, depends on the application of the prison mailbox rule.

## B.

Nearly fifteen years ago, the Supreme Court promulgated the prison mailbox rule. *Houston v. Lack*, 487 U.S. 266 (1988). *Houston* involved a pro se prisoner's appeal of a district court's denial of his petition for a writ of habeas corpus. The prisoner gave a notice of appeal to prison authorities on the twenty-seventh day following the district court's judgment. But the district court did not receive the filing until the thirty-first day, one day beyond the permitted period. The United States Court of Appeals for the Sixth Circuit dismissed the appeal because the prisoner had filed it outside of the permitted thirty days.

The Supreme Court reversed, crafting a prison mailbox rule whereby the date on which a prisoner transmitted documents to prison authorities would be considered the actual filing date. The Court designed the rule specifically for pro se prisoners. *Id.* at 275 ("[A] pro se prisoner has no choice but to hand his notice over to prison authorities for forwarding to the court clerk."). The Court cited several policy considerations for its decision: a pro se prisoner may only communicate with the district court through prison authorities; a tardy prisoner is not free to "walk" papers to the district court; and the prevention of an intentional delay in transmission by prison authorities. *Id.* at 274. The Court also noted the "well-developed procedures" at federal prisons that record the date and time of prisoner submissions, making reference to prison mail logs a "straightforward inquiry." *Id.* at 275.

The dissenting justices in Houston remarked that the "decision obliterates the line between textual construction and textual enactment." *Id.* at 277 (Scalia, J., dissenting). The dissent also noted that "the Court's rule makes a good deal of sense [but] it is not the rule that we have

promulgated through congressionally prescribed procedures." *Id.*

## C.

Five years after *Houston*, the Supreme Court returned to the prison mailbox rule in *Fex v. Michigan*, 507 U.S. 43 (1993). The State of Michigan sought to try a prisoner detained by the State of Indiana. Under the Interstate Agreement on Detainers, a prisoner may file a request for final disposition in the prosecuting state.[5] The Agreement provides for dismissal with prejudice if the prosecuting state does not bring the prisoner to trial within 180 days of receiving such a request. Here, Michigan brought the prisoner to trial 196 days after he delivered his request to prison authorities, but only 177 days after the Michigan prosecutor received the request.

The Court held the prison mailbox rule did not protect the detainee, focusing on the Agreement's specific language: "[the detainee] shall be brought to trial within one hundred and eighty days after he *shall have caused to be delivered* to the prosecuting officer . . . written notice of the place of his imprisonment and his request for a final disposition . . . ." *Id.* at 45 n.1 (quoting 18 U.S.C. app. § 2, Art. III(a) (emphasis added)). The Court concluded this language meant the 180-day period could not begin to run until the prosecuting officer received the request for final disposition. Because, under the statute, the time period specifically commenced after delivery to the prosecuting officer, the prison mailbox rule did not apply.

The line between *Houston* and *Fex* is a narrow one. The distinguishing factor appears to be the specificity of the "service" language in the statute at issue. Before we examine the statutory language of civil forfeitures, it is instructive to look at three recent appellate decisions.

---

5. The Interstate Agreement on Detainers permits a prisoner to request final disposition of any untried "indictment, information, or complaint." 18 U.S.C. app. § 2.

## D.

In *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999), a prisoner filed an administrative claim of excessive force under the Federal Tort Claims Act. He delivered the claim to prison authorities within the Drug Enforcement Administration's two-year regulatory period, but the DEA did not receive the claim until one day beyond the permitted time. The Court of Appeals for the Second Circuit found no difference between the filing of a court action and the filing of an administrative claim, so it applied the prison mailbox rule to make the plaintiff's filing timely. *Id.* But the court did explain that "*Houston* does not apply, of course, when there is a specific statutory regime to the contrary." *Id.* at 152 n.1.

The Courts of Appeals for the Fifth and Ninth Circuits have rejected the prison mailbox rule's application to administrative proceedings when precluded by a specific statutory or regulatory regime. *Smith v. Conner*, 250 F.3d 277 (5th Cir. 2001); *Nigro v. Sullivan*, 40 F.3d 990 (9th Cir. 1994). *Nigro* involved a pretrial detainee who tested positive for illegal drug use. Following the Bureau of Prisons' prescribed administrative remedies, the detainee filed his appeal with the General Counsel's Office. But that office did not receive his appeal until thirty-one days after the initial report, one day beyond the permitted period.

The Ninth Circuit rejected Nigro's appeal, finding the prison mailbox rule did not apply where administrative regulations defined the word "filed." *Id.* at 994 ("An appeal is 'considered filed when the receipt is issued.'") (quoting 28 C.F.R. § 542.14 (1993)). As the court expressed, "[w]e cannot in the name of sympathy rewrite a clear procedural rule." *Id.* at 995.

The Court of Appeals for the Fifth Circuit similarly declined to apply *Houston* where the administrative regulation was precisely written. In *Smith*, a pro se prisoner failed to file a timely appeal of his deportation with the Board of Immigration Appeals. 250 F.3d at 277. The prisoner had submitted his appeal to prison authorities on the final day of the permitted period, but the BIA did not receive the appeal until three days later. The court focused

on the relevant INS regulation, which provided that the date of filing is the date the BIA receives the appeal. *Id.* at 279. Based on this regulation, the court rejected application of the prison mailbox rule. *Id.*

All three appellate courts found no reason to apply the prison mailbox rule in the face of a specific statutory or regulatory regime. *Houston*'s narrow holding, therefore, apparently was designed to protect pro se prisoners in the absence of a clear statutory or regulatory scheme.[6]

### E.

Our decision here turns on the proper construction of the statute and regulations for administrative forfeitures. In order to contest an administrative forfeiture, a person claiming ownership must file a claim and give a bond to the United States. The government acknowledges Longenette properly filed his claim of ownership in his April 16 letter. The only question is whether Longenette timely "gave" a bond to the United States.

We examine the statutory language for civil forfeitures to determine whether there is a clear statutory scheme.[7] The government contends the statutory regime makes it "indisputable that Longenette had to perform his two acts [of filing a claim and posting bond] by May 29, 1992." Longenette did not meet his deadline, the government argues, because he failed to give a bond to the United States within the time period required by the civil forfeiture statute. Longenette responds that the statutory scheme does not clearly define the operative words "filing" a claim and "giving" a bond to require actual receipt of those items.

---

6. Since the Supreme Court's decision in *Fex*, we have recognized the prison mailbox rule in other contexts. *E.g.*, *In re Flanagan*, 999 F.2d 753, 758-59 (3d Cir. 1993) (applying the prison mailbox rule to the bankruptcy litigation process).

7. The District Court found "the regulation at issue specifies that the challenge to the forfeiture must be received by a date certain." *Longenette v. Krusing et al*, No. 92-312, at *12 (W.D. Pa. filed Sept. 26, 2000). But the court did not cite the specific regulatory language upon which it relied, nor did it focus on the "giving of the bond."

Accordingly, we review the relevant federal law. Section 1608 of the Tariff Act of 1930 requires that:

> Any person claiming such vessel, vehicle, aircraft, merchandise, or baggage may at any time within twenty days from the date of the first publication of the notice of seizure file with the appropriate customs officer a claim stating his interest therein. Upon the filing of such claim, and the giving of a bond to the United States in the penal sum of $ 5,000 or 10 percent of the value of the claimed property, whichever is lower, but not less than $ 250, with sureties to be approved by such customs officer, conditioned that in case of condemnation of the articles so claimed the obligor shall pay all the costs and expenses of the proceedings to obtain such condemnation, such customs officer shall transmit such claim and bond, with a duplicate list and description of the articles seized, to the United States attorney for the district in which seizure was made, who shall proceed to a condemnation of the merchandise or other property in the manner prescribed by law.

19 U.S.C. § 1608.

Section 1609 provides:

> If no such claim is filed or bond given within the twenty days hereinbefore specified, the appropriate customs officer shall declare the vessel, vehicle, aircraft, merchandise, or baggage forfeited, and shall sell the same at public auction in the same manner as merchandise abandoned to the United States is sold or otherwise dispose of the same according to law, and shall deposit the proceeds of sale, after deducting the expenses described in section 613 [19 USCS § 1613], into the Customs Forfeiture Fund.

19 U.S.C. § 1609.[8]

---

8. *See also* 21 C.F.R. § 1316.77(b) ("For property seized by officers of the Federal Bureau of Investigation, if the appraised value does not exceed the jurisdictional limits in § 1316.75(a), and a claim and bond are not filed within the 20 days hereinbefore mentioned, the FBI Property Management Officer shall declare the property forfeited.")

Read together, §§ 1608 and 1609 require an individual to file a claim and give a bond within twenty days of the publication of notice. Notwithstanding this requirement, the FBI extended the twenty day period here in its April 17 letter, providing Longenette a deadline of May 29. At issue is whether Longenette met this revised deadline.

The District Court found "the [prison mailbox] rule has never been applied outside of court filings; that is, the courts have never imposed the rule on the executive branch as Plaintiff is suggesting that we do here." *Longenette*, No. 92-312, at *12. But *Houston* and *Fex* direct us to look at the statutory and regulatory regimes, not the branch of government in which they originate, in deciding whether to apply the rule. In *Houston*, the relevant statute provided that "no appeal shall bring any judgment . . . before a court of appeals for review unless notice of appeal is filed, within thirty days after the entry of such judgment." 28 U.S.C. § 2107. The statute in *Houston* did not define whether "filed" meant actual receipt by the court. Because of this ambiguity, the Supreme Court crafted the prison mailbox rule.

The cases that have eschewed application of the prison mailbox rule involved statutory or regulatory schemes that clearly required actual receipt by a specific date. In *Fex*, the Interstate Agreement on Detainers incorporated language that specifically started the relevant 180-day period after the prosecuting officer received a prisoner's request for final disposition. 507 U.S. at 45. In *Smith*, the INS regulation provided that the date of filing was the date the Board of Immigration Appeals received the appeal. 250 F.3d at 278. And in *Nigro*, the regulation provided that "an appeal is considered filed when the receipt is issued." 40 F.3d at 994.

Here, there is no such conclusive language. Section 1608 provides that an administrative forfeiture proceeding terminates, and is referred to the local United States attorney for judicial forfeiture proceedings, "[u]pon the filing of [a] claim, and the giving of a bond to the United States." 19 U.S.C. § 1608. Section 1609 provides a clear deadline that the claim be "filed" and the bond be "given" within twenty days. As in *Houston*, neither the statutory nor regulatory schemes define "filed" and "given" as requiring

actual receipt.[9] The circumstances of his situation required Longenette to give his "bond" to prison authorities for forwarding to the FBI customs officer. He gave the in forma pauperis declaration to prison authorities on May 27, two days in advance of the FBI's deadline. Because neither the statute nor the regulations require "actual receipt," *Houston* mandates the prison mailbox rule's applicability. Therefore, Longenette timely contested the administrative forfeiture.

## III.

The question remains as to disposition of the forfeited van, or the proceeds from its sale.[10] The answer is not immediately apparent. At issue is whether the administrative forfeiture is void or voidable and whether the statute of limitations bars a new proceeding.

## A.

All of the appellate courts that have addressed similar issues were faced with defective notices of forfeiture. Four appellate courts — the Courts of Appeals for the Second, Fifth, Ninth, and Tenth Circuits — have held that a forfeiture conducted without adequate notice is void. *Alli-Balogun v. United States*, 281 F.3d 362, 370-71 (2d Cir. 2002); *Kadonsky v. United States*, 216 F.3d 499, 506-07 (5th Cir. 2000); *United States v. Marolf*, 173 F.3d 1213, 1218-20 (9th Cir. 1999); *United States v. Clymore*, 164 F.3d 569, 574 (10th Cir. 1999). As the Fifth Circuit explained in *Kadonsky*, "[t]he remedy for constitutionally insufficient notice in forfeiture proceedings is to void and vacate the

---

9. Nor was this clear in the FBI's correspondence to Longenette. The FBI's March 27 letter directed that Longenette "file a claim of ownership and a bond . . . with the FBI" by May 12. On April 17, the FBI acknowledged Longenette's claim of ownership and forwarded him an IFP declaration to complete. The letter directed Longenette to "[r]eturn this declaration and [claim] of ownership to the FBI by May 29, 1992." The FBI seemed to use the words "give," "file," and "return" interchangeably.

10. At oral argument, we asked counsel what had become of the van. Given the elapsed time, government counsel presumed the van had been sold. For purposes of this opinion, we will continue to refer to the van rather than the proceeds from its sale.

original proceeding, and [the statute of] limitations may bar consideration of the government's forfeiture claim on the merits unless the government provides a rationale to equitably toll or otherwise not apply the statute." 216 F.3d at 506-07.

One appellate court — the Court of Appeals for the Sixth Circuit — has interpreted insufficient notice as making forfeiture proceedings voidable, not void. *United States v. Dusenbery*, 201 F.3d 763, 768 (6th Cir. 2000), *aff'd on other grounds*, 534 U.S. 161 (2002). In a 2-1 decision, the Sixth Circuit declared that "inadequate notices should be treated as voidable, not void, and that the proper remedy is simply to restore the right . . . to judicially contest the forfeiture . . . . Thus, the Government is not required to institute 'new' forfeiture proceedings and the applicable statute of limitations, § 1621, therefore has no bearing." *Id.*

We have adopted the majority view when there has been inadequate notice. In *Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985), we declared that "[a] default judgment entered when there has been no proper service of complaint is, a fortiori, void, and should be set aside." We applied *Gold Kist* to civil forfeitures in *United States v. One Toshiba Color Television*, 213 F.3d 147, 156 (3d Cir. 2000) (en banc), holding that a prior forfeiture judgment issued without proper notice to a potential claimant is void. Because the administrative forfeiture lacked legal foundation, the judgment was incurable. *Id.*; *see also Kadonsky*, 216 F.3d at 506 ("[C]onstitutionally ineffective notice renders forfeiture orders void because the court lacked jurisdiction to enter them."). Thus, we held that where notice is improper, the administrative forfeiture is, a fortiori, void, and should be set aside.

Here, the government provided proper notice to Longenette. The proceedings, therefore, were valid from their inception. This distinction makes the administrative forfeiture proceeding here voidable, rather than void. Once notice was properly given to Longenette, the FBI validly could proceed with the administrative proceeding. Furthermore, the District Court subsequently had jurisdiction to enter the judgment of forfeiture. The only defect in this proceeding was the failure to apply the prison

mailbox rule. Because jurisdiction was proper, the court's judgment is voidable, not void.

If the administrative forfeiture is voidable, the proper remedy is to vacate the forfeiture and restore the prior situation. Once restored, the FBI would accept Longenette's IFP declaration in lieu of a bond, and the matter would be referred to the local United States attorney for judicial forfeiture. 19 U.S.C. § 1608; *see Dusenbery*, 201 F.3d at 766 ("A properly filed claim stops the administrative forfeiture process and requires the seizing agency to refer the matter to the United States Attorney to institute judicial forfeiture proceedings."); 21 C.F.R. §§ 1316.76(b), 1316.78.[11]

Nevertheless, at issue is whether the statute of limitations in 19 U.S.C. § 1621 bars the United States Attorney from instituting judicial forfeiture proceedings. The administrative forfeiture here occurred more than ten years ago, and under the applicable statute of limitations, "[n]o suit or action to recover any . . . forfeiture of property accruing under the customs laws shall be instituted unless such suit or action is commenced within five years after the time when the alleged offense was discovered." 19 U.S.C. § 1621. We have determined that administrative forfeitures are "separate proceedings" from judicial forfeitures. *United States v. $184,505.51 in U.S. Currency*, 72 F.3d 1160, 1164 (3d Cir. 1995). Because a judicial forfeiture would qualify as a new proceeding, it would appear that the statute of limitations, unless tolled, bars consideration of the government's forfeiture claim on the merits.[12]

---

11. In judicial forfeiture proceedings, the government must show probable cause for the forfeiture, which shifts the burden to the claimant to demonstrate by a preponderance of the evidence that the property is his and not the proceeds of drug transactions. 19 U.S.C. § 1615. "The claimant may meet his burden by showing that the property was not the proceeds of illegal drug activities or that the claimant is an 'innocent owner' and was unaware of the proceeds' criminal connection." *Dusenbery*, 201 F.3d at 766.

12. Congress recently passed the Civil Administrative Forfeiture Reform Act, P.L. 106-185, which applies to forfeitures commencing on or after 120 days from April 25, 2000. 18 U.S.C. § 983. Where a forfeiture is set aside due to inadequate notice, the government may commence a new forfeiture proceeding within a specified period of time. 18 U.S.C. § 983(e)(2). This statute does not operate retroactively so it is not directly relevant here. *United States v. One "Piper" Aztec*, No. 02-1925 (3d Cir. filed Mar. 5, 2003).

**B.**

The relevant statute, 19 U.S.C. § 1621, requires the government to institute forfeiture proceedings within five years after discovery of the alleged offense. Since administrative and judicial actions are "separate proceedings," that can no longer happen here. The statute does provide for express tolling of the limitations period during "the time of the absence from the United States of the person subject to the penalty or forfeiture, or of any concealment or absence of the property." 19 U.S.C. § 1621(2). There is no statutory exception to the statute of limitations for the type of situation presented here. But even so, under limited and specific circumstances, the statute of limitations may be tolled based on equitable principles. *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946).

The Supreme Court has held that limitations periods are subject to equitable tolling where tolling is not inconsistent with the statute. *United States v. Beggerly*, 524 U.S. 38, 48 (1998). We recognize that we have "exercised caution in using the equitable tolling doctrine." *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999). But it is appropriate to apply the doctrine "where consistent with congressional intent and called for by the facts of the case." *Bowen v. City of New York*, 476 U.S. 467, 479 (1986); *cf. Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998) ("The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable.").

The Court of Appeals for the Fifth and Tenth Circuits both allowed for the possibility of equitable tolling in civil forfeiture cases, with the Fifth Circuit stating the government may have had "a strong argument for equitable tolling" if the court had reached that question. *United States v. Clymore*, 245 F.3d 1195, 1199 (10th Cir. 2001); *Kadonsky*, 216 F.3d at 507 & n.8; *see also United States v. $57,960.00 in U.S. Currency*, 58 F. Supp.2d 660, 664 (D.S.C. 1999) (invoking the doctrine of equitable tolling where the administrative forfeiture proceeding was voided). The *Kadonsky* court noted the government's good faith efforts to give notice and the inequity inherent in the strict

application of a statute of limitations where the seized funds "were clearly the product of drug transactions." 216 F.3d at 507 & n.8.

Several similar factors weigh in favor of granting the government equitable relief here. First, the government acted in good faith. It did not seek to hide the van from Longenette, nor did it try to withhold notice from him. Furthermore, the government gave proper notice and even extended Longenette's response time to accommodate him. The long delay in litigation was not the government's fault; if anything, Longenette's erroneous framing of the facts in his previous appearance before this court contributed to the delay.[13] The FBI's only error here was failing to recognize the prison mailbox rule's applicability, certainly a reasonable error in this matter of first impression.

Second, the record includes evidence that the van qualifies as § 881(a) property used in facilitating illicit drug transactions. Third, the relevant statute of limitations provision, 19 U.S.C. § 1621, provides for express tolling in some circumstances but does not preclude equitable tolling. In specific circumstances, congressional intent to permit equitable tolling may be inferred where a statute provides for express tolling in some instances and does not otherwise preclude it. *Bowen*, 476 U.S. at 480 ("[Where Congress] express[es] its clear intention to allow tolling in some cases . . . , we conclude that application of a traditional equitable tolling principle . . . is fully consistent with the overall congressional purpose and is nowhere eschewed by Congress.") (internal quotations omitted).

Finally, it bears noting that all of the forfeiture cases addressed by our sister circuits involved due process claims of constitutionally inadequate notice. But *Houston*'s prison mailbox rule was not based on due process considerations, and other courts specifically have found that the rule is not

---

13. In his original complaint, Longenette stated: "I was given only two days notice that my Van [sic] and personal property were being subjected to forfeitur[ ]e proceedings in May, 1992. . . . I contend that there was never enough time to respond or prepare any pleadings to defend my interests in the property." The record reveals this is a clearly inaccurate statement.

based on constitutional requirements. *E.g.*, *Jenkins v. Burtzloff*, 69 F.3d 460, 461 (10th Cir. 1995) ("The rationale of *Houston* was not constitutional or equitable in nature; rather, it was based on an interpretation of the word 'filed' in the rule and statute governing the timeliness of notices of appeal."); *Nigro*, 40 F.3d at 995 & n.1 (finding that *Houston* contains no "explicit reference" to due process). Thus, Longenette's due process rights will not be infringed upon by equitably tolling the statute of limitations.[14]

The government did not ask for equitable tolling of the statute of limitations. Nonetheless, we may exercise equitable relief at our discretion where the interests of justice are served. *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1999). In *Midgley*, we held "a statute of limitations should be tolled only in the rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice." 142 F.3d at 179 (internal quotations and citations omitted). We believe the facts here present one of those rare situations.

The administrative forfeiture proceeding is set aside without prejudice to the government. The statute of limitations under 19 U.S.C. § 1621 is equitably tolled. The government has six months from this date in which to file judicial forfeiture proceedings.

## IV.

For the foregoing reasons, we will reverse the judgment of the District Court and remand for proceedings consistent with this opinion.

A True Copy:
      Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*

---

14. As noted, Congress recently passed CAFRA, which included a provision that alters the statute of limitations where a court later voids the administrative forfeiture. 18 U.S.C. § 983(e)(2).