UNITED STATES of America,
Plaintiff,

v.

**CONTENTS OF TWO SHIPPING CONTAINERS SEIZED AT ELIZABETH, NEW JERSEY, on or about December 10, 1990, including one 1990 Nissan 300ZX (VIN JN1RZ26A3LX010643) and various items of furniture and personal effects, Defendants.**

No. Civ 01–5823(WHW).

United States District Court,
D. New Jersey.

April 14, 2003.

nosis.

410

Peter G. O'Malley, Assistant U.S. Attorney, D.N.J., Newark, N.J., for Plaintiff.

Daniel Oriakhi, Fort Dix, N.J., pro se.

Daniel Oriakhi, Fort Dix, N.J., for Defendant.

## OPINION

WALLS, District Judge.

The United States moves for summary judgment in the civil forfeiture action of the contents of two shipping containers seized in Elizabeth, New Jersey on or about December 10, 1990, including one 1990 Nissan 300ZX (VIN JN1RZ26A3LX010643), and various items of furniture and personal effects. Claimant Daniel Oriakhi, *pro se*, a/k/a Smith Adoga, a/k/a Adoga Smith, opposes the motion. For the reasons stated, the motion for summary judgment is granted.

## FACTS AND PROCEDURAL BACKGROUND

This case deals with property seized from Mr. Oriakhi during the course of a criminal investigation and his arrest for narcotics and currency violations. From late 1988 through April 1990, two large scale heroin distribution organizations—run by Robert Dowdy and Linwood Williams—operated in the Baltimore, Maryland area. *United States v. Oriakhi*, 57 F.3d 1290, 1293 (4th Cir.1995). Mr. Oriakhi and his partners supplied these groups with heroin. *Id.* Government agents observed Mr. Oriakhi deliver heroin and large amounts of currency to various individuals. *Id.* When Mr. Dowdy was arrested, he agreed to cooperate with the government's investigation. *Id.* Mr. Oriakhi

fled to Nigeria, but was indicted *in absentia. Id.*

Mr. Oriakhi returned to the United States in the summer of 1990, and traveled with a passport in the name of Adoga Smith. *Id.* On December 10, 1990, the United States Customs Service ("Customs") seized the contents of two shipping containers bound for Nigeria in Elizabeth, New Jersey, including one 1990 Nissan 300ZX (VIN JN1RZ26A3LX010643), and various items of furniture and personal effects. *Id.* at 1294. According to the government, the shipping receipts gave vague information and omitted any identification of a shipper or consignee. *Id.* Many of the items were labeled "Adoga Smith Company." *Id.* Customs agents typically examine unusual shipments: (1) bound for narcotic source countries; (2) bound for countries subject to embargo; or (3) accompanied by incomplete or suspicious paperwork. *Id.*

On December 13, 1990, Customs agents at John F. Kennedy International Airport found two guns and ammunition from an x-ray examination of luggage belonging to Adoga Smith on a flight bound for Switzerland. *See United States v. $97,253 in U.S. Currency,* No. 95–CV–3982, 2000 WL 194683, at *1 (E.D.N.Y. Feb. 15, 2000), *aff'd, United States v. Oriakhi,* 9 Fed. Appx. 39, 2001 WL 474657 (2d Cir.2001). They opened other luggage belonging to Adoga Smith, and found $10,000 in $100 bills. *Id.* The Customs agents requested that Adoga Smith disembark from the airplane for questioning. *Id.* They informed Adoga Smith of the currency reporting requirements, and Adoga Smith stated he was carrying approximately $2,000. *Id.* He signed a Customs form using the name Smith Adoga and, after informing him of his Constitutional rights, the agents conducted a search. *Id.* The Customs agents discovered a total of $97,253 in United States currency concealed in Adoga Smith's luggage and hidden within his clothing. *Id.*

In February 1991, Mr. Oriakhi, using the name Adoga Smith, pleaded guilty in the United States District Court for the Eastern District of New York to a violation of 31 U.S.C. § 5316 for failing to file a report when transporting more than $10,000 in United States currency outside the United States. *$97,253 in U.S. Currency,* 2000 WL 194683, at *4. After this arrest, government authorities in Maryland learned that Mr. Oriakhi was, in fact, the same person as Adoga Smith. Mr. Oriakhi was sent to Maryland, where a federal grand jury re-indicted him. *Oriakhi,* 57 F.3d at 1295. Some of the items seized in Elizabeth, New Jersey were used as evidence against Mr. Oriakhi at trial. *Id.* at 1294. In December 1992, a jury in the United States District Court for the District of Maryland convicted Mr. Oriakhi of conspiracy to distribute heroin and possession with intent to distribute heroin on two separate occasions. *Id.* at 1295. Mr. Oriakhi was sentenced to a term of 300 months imprisonment, and the Fourth Circuit affirmed his conviction. *Id.* at 1293.

On September 29, 1995, the government commenced an *in rem* civil action in the United States District Court for the Eastern District of New York to forfeit the $97,253 in United States currency seized from Mr. Oriakhi at the airport and the contents of the two shipping containers seized in Elizabeth, New Jersey. On February 11, 1997, the court granted the government's motion to transfer the portion of Mr. Oriakhi's action requesting compensation for the property seized in New Jersey to this district and, on February 14, 1997, Mr. Oriakhi filed that complaint in this Court (Civ. No. 97–0729).

The matter now before the Court relates to the civil forfeiture proceeding of the contents of the two shipping containers

seized in Elizabeth, New Jersey. On May 10, 1991, the Drug Enforcement Agency ("DEA") effected the forfeiture of the Nissan 300ZX; on August 8, 1991, Customs officials effected an administrative forfeiture of the remaining contents of the two shipping containers. Mr. Oriakhi sought to vacate the administrative forfeitures of these items because the government failed to provide adequate notice. In an order dated August 4, 1999, this Court vacated the administrative forfeitures because there was inadequate notice, and ordered the government to commence judicial forfeiture proceedings. Mr. Oriakhi appealed and, on October 1, 2001, the Third Circuit affirmed this Court's order. On December 14, 2001, the government filed its complaint for judicial forfeiture of the contents of the two shipping containers seized in Elizabeth, New Jersey. On January 30, 2002, the government moved for summary judgment and a final order of forfeiture.

**STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. *Id.* at 248, 106 S.Ct. at 2510. The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. *See Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *See Sound Ship Building Co. v. Bethlehem Steel Co.*, 533 F.2d 96, 99 (3d Cir.1976), *cert. denied*, 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976). At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510. In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Wahl v. Rexnord, Inc.* 624 F.2d 1169, 1181 (3d Cir.1980).

In a judicial forfeiture proceeding, the government must demonstrate that probable cause existed for the seizure of the property. *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir.1984) (citations omitted). "Once the government establishes probable cause the burden of proof shifts to the defendant to show that the property was not to be used for this purpose." *Id.* at 196. In *United States v. $10,700 in U.S. Currency*, 258 F.3d 215 (3d Cir.2001), the Third Circuit said:

> Three elements must be present in order to subject a claimant's property to civil forfeiture pursuant to 21 U.S.C. § 881(a)(6): (1) the subject property must be moneys, negotiable instruments, securities, or other things of value; (2) there must be probable cause to believe that there exists illicit drug activity that

renders the seized property subject to forfeiture; and (3) there must be probable cause to believe that a connection, or nexus, exists between the seized property and the predicate drug activity the government has identified.

*$10,700 in U.S. Currency,* 258 F.3d at 222 (citations and footnotes omitted).

## DISCUSSION

### A. The Doctrine of Collateral Estoppel Bars Mr. Oriakhi from Relitigating the Source of the Fund Used to Purchase the Items Contained in the Two Shipping Containers.

 To defeat summary judgment, Mr. Oriakhi must set forth evidence that the contents of the two shipping containers are not subject to forfeiture. Mr. Oriakhi argues "Claimant purchased the properties with revenue from hard-earned years of working, which source was verified and authenticated by claimants' [*sic*] former attorney." Oriakhi Br. at 13. However, the doctrine of collateral estoppel, or issue preclusion, prevents Mr. Oriakhi from arguing that the funds used to purchase the seized goods were lawfully obtained. Four factors to determine whether issue preclusion may be applied:

(1) the identical issue was previously adjudicated;

(2) the issue was actually litigated;

(3) the previous determination was necessary to the decision; and

(4) the party being precluded from relitigating the issue was fully represented in the prior action.

*Raytech Corp. v. White,* 54 F.3d 187, 190 (3d Cir.1995) (citation omitted).

In his February 15, 2000 decision, Judge Gleeson of the United States District Court for the Eastern District of New York made these findings of fact, which examine the source of the funds used to purchase the items found in the two shipping containers seized in Elizabeth, New Jersey:

The following documents were found on the person of Daniel Oriakhi or in his baggage on the night of his arrest on December 13, 1990:

(a) an invoice for the purchase of a 1990 Nissan 300ZX from Five Town Motor, Inc. for $32,396.000 in the name of Smith Adoga on September 13, 1990, reflecting a cash deposit of $9,000;

(b) an auto owner's maintenance folio which contains a "Certificate of Sale" from Five Town Motors, Inc. for a 1990 Nissan 300ZX, VIN JN1RZ26A3LX010643, signed by Smith Adoga on September 26, 1990 and a "Certificate of Origin for a Vehicle" reflecting the transfer of ownership of a 1990 Nissan 300ZX, VIN JN1RZ26A3LX010643 to Smith Adoga of Lagos, Nigeria;

(c) an invoice dated November 19, 1990 to Smith Adoga for the shipment of two containers (20 and 40 foot) containing personal effects and a car to Nigeria and reflecting a payment of $10,000.00 to the Ben Odihirin Company, telephone numbers: (718) 464–3429 and (718) 464–3436;

(d) an invoice from Tourneau reflecting the cash purchase on September 23, 1990 by Smith Adoga of Flushing, Queens of three items for a total of $4,450;

(e) a blue label from the Seaman Furniture Company dated August 29, 1990, describing an end table base, reflecting the name ALCASS c/o Adoga Smith Co. and a yellow label from the Seaman Furniture Company dated August 25, 1990, describing an end table top;

(f) a blue label from the Seaman Furniture Company dated August 29, 1990, describing a king mattress, reflecting the name ALCASS c/o Adoga Smith Co. and a yellow label from the Seaman Furniture Company dated August 25, 1990, describing an end table base;

(g) a blue label from Sharut Furniture, Inc., dated September 7, 1990, describing a glass shelf, lacquer door and mirror back, ship to: Adoga Smith Company, deliver to ALCASS Warehouse, 701 Spring Street, Elizabeth, NJ, Ben Odihirin.

*$97,253 in U.S. Currency,* 2000 WL 194683, at \*1–2. At trial before Judge Gleeson, Mr. Oriakhi testified that his uncle, Edward Edosa, gave him $140,000 before Mr. Oriakhi left for the United States. *Id.* at \*4. Mr. Oriakhi "testified that he used the $140,000 given to him by Edosa to purchase certain items of personal property. Specifically, Oriakhi testified that, using this $140,000, he paid cash for ... the Nissan automobile, household goods and furniture, and Tourneau watches." *Id.* The remainder—$97,253 in U.S. Currency—Mr. Oriakhi intended to return to his uncle. *Id.*

Judge Gleeson discredited Mr. Oriakhi's claim that $140,000 came from his uncle. Judge Gleeson said, "I reject this testimony in its entirety. It is a patently implausible story, and it is also irreconcilable with prior statements Oriakhi made" to Customs agents at the airport. *Id.* at \*5. Judge Gleeson continued,

> I further find, beyond a reasonable doubt, that the defendant funds are directly traceable to Oriakhi's heroin trafficking. During the approximately two-year period prior to the seizure of the funds, Oriakhi was an active and successful heroin dealer. Between April 1989 and February 1990, Dowdy purchased heroin from Oriakhi on a regular basis. During that period, Dowdy paid Oriakhi at least $1.2 million. After Robert Dowdy's arrest in February 1990, Oriakhi continued to supply the Williams organization with heroin through April 1990.

> In short, Oriakhi was an international heroin trafficker who obtained hundreds of thousands, if not millions, of dollars from that business.... I find as a matter of fact that the 'Edosa defense' is simply a fabrication, and that the paucity of evidence offered in support of it reflects Oriakhi's understanding that it will not withstand even the slightest scrutiny.

*Id.* at \*5.

Before this Court, the totality of the circumstances surrounding Oriakhi's business dealings and the source of his income provide probable cause for forfeiture of the contents of the two shipping containers on a theory of proceeds of illegal drug transactions pursuant to 21 U.S.C. § 881(a)(6). Judge Gleeson addressed the same issue, and rejected Mr. Oriakhi's assertion that the money had come from Mr. Oriakhi's uncle. Thus, issue preclusion prevents Mr. Oriakhi from arguing that the money used to purchase the items in the two shipping containers was the product of "hard-earned years of working." Oriakhi Br. at 13.

■ Our Supreme Court teaches that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). Applying the four *Raytech* factors to the present issue, it is clear that issue preclusion prevents Mr. Oriakhi from relitigating the source of the funds.

(1) Before Judge Gleeson, Mr. Oriakhi argued that his uncle, Edward Edo-

sa, gave the money to Mr. Oriakhi to purchase items in the United States. Judge Gleeson rejected Mr. Oriakhi's claims, and concluded that the source of the funds came from Mr. Oriakhi's role in heroin trafficking. *$97,253 in U.S. Currency*, 2000 WL 194683, at *5. This Court concludes that the identical issue has been previously adjudicated. *See Raytech Corp.*, 54 F.3d at 190.

(2) The issue regarding the source of the funds was actually litigated. *Id.* Oriakhi testified that the funds came from his uncle, but Judge Gleeson concluded that the $140,000 was "directly traceable to Oriakhi's heroin trafficking." *$97,253 in U.S. Currency*, 2000 WL 194683, at *5.

(3) To determine whether the $97,253 in U.S. Currency was subject to forfeiture, Judge Gleeson had to determine the validity of Mr. Oriakhi's claim of a legitimate source for the $140,000. This Court concludes that the previous determination was necessary to Judge Gleeson's decision. *See Raytech Corp.*, 54 F.3d at 190.

(4) Mr. Oriakhi appeared *pro se* before Judge Gleeson. While Mr. Oriakhi was not represented by counsel, Mr. Oriakhi fully participated in the trial regarding forfeiture of the $97,253 in U.S. Currency. This Court concludes that Mr. Oriakhi's interests were fully represented in the previous action. *See Raytech Corp.*, 54 F.3d at 190.

While the ultimate issue before Judge Gleeson dealt with Mr. Oriakhi's claim to the $97,253 seized from Mr. Oriakhi at the airport, Judge Gleeson addressed the source of the $140,000 that Mr. Oriakhi claimed belonged to his uncle, Edward Edosa. With the $140,000, Mr. Oriakhi purchased a number of items, namely the 1990 Nissan 300ZX (VIN JN1RZ26A3LX010643), and various items of furniture and personal effects found in the two shipping containers. The remainder—$97,253—Mr. Oriakhi allegedly intended to return to his uncle. Judge Gleeson concluded that the total amount of $140,000 did not come from Mr. Oriakhi's uncle, but was "directly traceable to Oriakhi's heroin trafficking." *$97,253 in U.S. Currency*, 2000 WL 194683, at *5. Because the source of the $140,000 was: (1) previously adjudicated; (2) actually litigated; (3) necessary to decide the matter before Judge Gleeson; and (4) petitioner's interests were fully represented, this Court concludes that Mr. Oriakhi is collaterally estopped from relitigating the source of the funds used to purchase the items found in the two shipping containers.

**B. Given the Nature of the Property at Issue, the Statute of Limitations for Initiating a Civil Forfeiture Actions Is Equitably Tolled**

After seizing the contents of the two shipping containers on December 10, 1990, the DEA and Customs officials instituted administrative forfeiture actions for them. This Court's August 4, 1999 Order vacated the administrative forfeiture because there had been inadequate notice to Mr. Oriakhi, and directed the government to commence judicial forfeiture proceedings. The Third Circuit affirmed this Court's order and, on December 14, 2001, the government filed its complaint. However, 19 U.S.C. § 1632 mandates such proceedings to commence within five years after discovery. Mr. Oriakhi argues that the statute of limitations bars the government from filing a new forfeiture action.

In *United States v. One Toshiba Color Television*, 213 F.3d 147 (3d Cir. 2000), the Third Circuit stated that a judgment of forfeiture is void without adequate notice. *Id.* at 156. While the Circuit concluded the doctrine of laches was not

available to preclude a claimant from challenging a void judgment, it specifically reserved judgment on whether the statute of limitations prohibited the government from reinitiating the forfeiture action, or if the statute of limitations should be tolled. *See id.* at 158–59. In *Longenette v. Krusing,* 322 F.3d 758 (3d Cir.2003), the Third Circuit permitted equitable tolling of the statute of limitations. Prisoner William Longenette challenged the administrative forfeiture of his van after he had been arrested on drug-related charges. *Id.* at 759–60. Because Mr. Longenette had not timely returned his *in forma pauperis* declaration in lieu of the mandatory bond, the FBI proceeded with the administrative forfeiture. *Id.* at 760. The Third Circuit concluded that the prison mailbox rule applied, so the date on which Mr. Longenette gave his *in forma pauperis* declaration to prison authorities for mailing was considered the filing date, and Mr. Longenette's challenge of the administrative forfeiture was timely. *Id.* at 765. When an administrative forfeiture is voidable, the remedy is to vacate the forfeiture and refer the matter to the local United States Attorney's office for judicial forfeiture. *Id.* at 766. However, judicial forfeiture of Mr. Longenette's van would have violated the five-year statute of limitations for such proceedings.[1]

The Fifth Circuit and the Tenth Circuit permit equitable tolling of the statute of limitations when faced with defective notices of forfeiture. *See Kadonsky v. United States,* 216 F.3d 499 (5th Cir.2000) and *United States v. Clymore,* 245 F.3d 1195 (10th Cir.2001). In *Clymore,* the Tenth Circuit not only equitably tolled the statute of limitations, but also permitted the government to raise the doctrine of equita-

ble tolling as a defense after it had earlier remanded the case for further proceedings. *Id.* at 1197–98; *see also Clymore v. United States,* 164 F.3d 569 (10th Cir. 1999). Unlike *Clymore* and *Kadonsky,* which dealt with the due process claims of inadequate notice, the main issue in *Longenette* addressed the applicability of the prison mailbox rule in forfeiture proceedings. *Longenette,* at 767. After examining these decisions, the Third Circuit equitably tolled the statute of limitations under 19 U.S.C. § 1621 and permitted the government to file judicial forfeiture proceedings of Mr. Longenette's van. *Id.* Citing *Kadonsky,* the Third Circuit held that the government acted in good faith in giving notice to Mr. Longenette. *Longenette,* at 767, *citing Kadonsky,* 216 F.3d at 507 n. 8. Further, the Third Circuit concluded that the evidence supported a finding that the van qualified as property used to facilitate illicit drug transactions. *Longenette,* at 767.

This Court concludes that the doctrine of equitable tolling should apply in the judicial forfeiture proceeding of the contents of the two shipping containers seized in Elizabeth, New Jersey on December 10, 1990. The facts of this case differ from those of *Longenette,* in that this Court need not address the applicability of the prison mailbox rule. However, in reaching its *Longenette* decision, the Third Circuit relied on the Fifth Circuit's *Kadonsky,* which permitted equitable tolling of the statute of limitations once the administrative forfeiture was void for inadequate notice. *Longenette,* at 768, *citing Kadonsky,* 216 F.3d at 507 n. 8. With regard to the seizure of the two shipping containers, there is no evidence demonstrating that

---

1. Beginning on or after 120 days from April 25, 2000, the Civil Asset Forfeiture Reform Act of 2000, Pub.L. No. 106–185, § 21, 114 Stat. 202, 225 (codified at 18 U.S.C. § 983),

permits the government to commence a new judicial forfeiture proceeding within six months after the court has set aside forfeiture for inadequate notice.

government "deliberately misled or intentionally neglected to give notice." *Kadonsky,* 216 F.3d at 507 n. 8. On March 4, 1991, the government sent the first notice of forfeiture by certified mail to Mr. Oriakhi's record address in Brooklyn, New York. On or before April 5, 1991, the government sent the second notice by registered mail to an address in Lagos, Nigeria. On or about May 13, 1991, the government sent the third notice by certified mail to the Baltimore County Jail; this notice was returned in an envelope marked "Not Listed." While this Court's August 4, 1999 Order set aside the administrative forfeitures because of inadequate notice, there was no evidence that the government had deliberately intended to mislead Mr. Oriakhi or intentionally failed to give him notice. Instead, the Court concluded that the notice given by the government was not reasonably calculated to apprise Mr. Oriakhi of the pendency of the forfeiture proceedings. *See Robinson v. Hanrahan,* 409 U.S. 38, 39–40, 93 S.Ct. 30, 31, 34 L.Ed.2d 47 (1972).

To defeat summary judgment, the party opposing the motion must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. In his brief, Mr. Oriakhi argues that the government acted in bad faith, but the Court finds no evidence to support his claim. Further, Judge Gleeson has already determined that the source of the funds used to purchase the items in the two shipping containers came from Mr. Oriakhi's role in heroin trafficking. *$97,253 in U.S. Currency,* 2000 WL 194683, at *5. Finally, the Third Circuit permits equitable tolling "under limited and specific circumstances." *Longenette,* at 768. It acknowledges that 19 U.S.C. § 1621 permits express tolling in some circumstances and does not completely preclude equitable tolling. *Longenette,* at 768. "In specific circumstances, congressional intent to permit equitable

tolling may be inferred where a statute provides for express tolling in some instances and does not otherwise preclude it." *Id.* at 768, *citing Bowen v. City of New York,* 476 U.S. 467, 480, 106 S.Ct. 2022, 2030, 90 L.Ed.2d 462 (1986). In light of the illegal source of the contents of the two shipping containers, the Court concludes that equitable tolling is appropriate in this case. Because there is no genuine issue of material fact to be determined by a factfinder, the Court grants the government's motion for summary judgment.

**CONCLUSION**

For the reasons stated, the government's motion for summary judgment is granted.

**ORDER**

This matter having been opened to the Court by Christopher J. Christie, United States Attorney (Peter G. O'Malley, Assistant United States Attorney, appearing), attorneys for the plaintiff, for an order granting summary judgment pursuant to Fed.R.Civ.P. 56(b), and the claimant Daniel Oriakhi, *pro se,* a/k/a Smith Adoga, a/k/a Adoga Smith, having responded, and the Court having considered the papers submitted and the arguments of the parties; and it appearing that the final judgment of the United States District Court for the Eastern District of New York bars the claimant from relitigating the question of the source of the funds used to purchase the defendant property; and it appearing further, in light of the illegal source of the defendant property making this case appropriate for application of the doctrine of equitable tolling of the statute of limitations; and for good cause shown it is on this _____ day of April, 2003:

ORDERED that the motion of the plaintiff be, and hereby is, GRANTED; and it is further

ORDERED, ADJUDGED and DE-CREED, that the claim of Daniel Oriakhi to the property at issue be, and hereby is, STRICKEN; and it is further

ORDERED that Mr. Oriakhi's application for relief be, and hereby is, DENIED; and it is further

ORDERED that a final order of forfeiture of the subject property, described more particularly in the pleadings, and consisting of a freezer, various items of furniture, and one 1990 Nissan 300ZX, is hereby GRANTED; and it is further

ORDERED that the defendant property is FORFEITED to the United States of America; and that no right, title, or interest in the defendant property shall exist in any other party.