In the

# United States Court of Appeals

### For the Seventh Circuit

No. 15-3730

JOSE I. CHAVARRIA-REYES,

*Petitioner*,

*v.*

LORETTA E. LYNCH, Attorney General of the United States,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A206-274-376.

ARGUED SEPTEMBER 20, 2016 — DECIDED DECEMBER 30, 2016

Before BAUER, POSNER, and EASTERBROOK, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. An immigration judge ordered Jose Chavarria-Reyes removed to Mexico after concluding that he lacks permission to be here and is ineligible for discretionary relief because he has committed a crime of moral turpitude. He does not contest either conclusion but contends nonetheless that the IJ erred by failing to alert him

to the possibility of voluntary departure under §240B(a) of the Immigration and Nationality Act, 8 U.S.C. §1229c(a).

Voluntary departure usually depends on a showing of good moral character, a showing that Chavarria-Reyes cannot make: he has at least three convictions, for domestic battery, retail theft, and home-repair fraud. But voluntary departure under §240B(a) is available without regard to the alien's character, provided he claims this privilege at the outset of the proceedings and forswears all other arguments. An alien who departs voluntarily has more opportunity to return in later years than does an alien removed involuntarily. The Board of Immigration Appeals rejected his argument that the IJ had violated the Due Process Clause of the Fifth Amendment, and Chavarria-Reyes has filed a petition for review of that order.

His initial problem is that the Board entered its decision on November 6, 2015, and the petition for review was not received in our clerk's office until December 8, two days beyond the 30-day time limit. 8 U.S.C. §1252(b)(1). The Supreme Court has characterized a predecessor statute as jurisdictional, *Stone v. INS*, 514 U.S. 386, 405 (1995), and we held in *Sankarapillai v. Ashcroft*, 330 F.3d 1004, 1005 (7th Cir. 2003), that the current version also is jurisdictional. Chavarria-Reyes maintains, however, that while in detention preceding removal he handed his petition to a guard on November 30, making it timely under Fed. R. App. P. 25(a)(2)(C), which applies the "prison mailbox rule" to all appellate papers. The Attorney General agrees with this contention, which poses a novel question in this circuit.

Rule 25(a)(2)(C) provides:

> A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing. If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule. Timely filing may be shown by a declaration in compliance with 28 U.S.C. §1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

We can't see any reason why this rule would not apply to immigration. *Houston v. Lack*, 487 U.S. 266 (1988), created the prison mailbox rule for use in civil litigation, where the time limit for filing a notice of appeal is jurisdictional. *Bowles v. Russell*, 551 U.S. 205 (2007). If intra-prison filing satisfies a jurisdictional requirement for civil litigation, it can equally satisfy a jurisdictional requirement for administrative litigation.

We recognize that a panel of the Fifth Circuit once held that the prison mailbox rule does not apply to immigration matters. *Guirguis v. INS*, 993 F.2d 508 (5th Cir. 1993). But Rule 25(a)(2)(C) was amended after *Guirguis*, and a later decision from the same circuit said that a filing while in immigration detention after the Rule was amended counts as timely. *Smith v. Conner*, 250 F.3d 277, 279 n.11 (5th Cir. 2001) (dictum). The Fifth Circuit has since held that immigration detainees represented by counsel cannot take advantage of Rule 25(a)(2)(C), see *Navarro-Miranda v. Ashcroft*, 330 F.3d 672, 676 (5th Cir. 2003), but Chavarria-Reyes lacked counsel when he handed his petition to the guard. What's more, this circuit has concluded that represented prisoners, no less than those proceeding on their own, can use the prison mailbox rule, whose text does not draw a distinction between represented and *pro se* litigants. See *United States v. Craig*, 368 F.3d 738 (7th Cir. 2004).

The Second and Ninth Circuits have held that the prison mailbox rule applies to immigration proceedings. See *Arango-Aradondo v. INS*, 13 F.3d 610, 612–13 (2d Cir. 1994); *Barrientos v. Lynch*, 829 F.3d 1064 (9th Cir. 2016). No court—other than the superseded opinion in *Guirguis*—has held otherwise. We join the Second, Fifth, and Ninth Circuits in concluding that aliens detained pending removal can take advantage of Rule 25(a)(2)(C). Chavarria-Reyes's petition is timely.

The Attorney General maintains that we nonetheless lack jurisdiction because of Chavarria-Reyes's criminal convictions and the fact that voluntary departure is a discretionary remedy. See 8 U.S.C. §1252(a)(2)(B), (C). But §1252(a)(2)(D) provides that questions of law are reviewable notwithstanding the other parts of §1252(a). The question Chavarria-Reyes presents—whether the IJ had a duty to notify him of the opportunity for relief under §240B(a)—is one of law for the purpose of §1252(a)(2)(D).

And there can be no doubt that the IJ failed in this duty. Section 240B(a) has been implemented by 8 C.F.R. §1240.26(b)(1)(i), which provides that an IJ may grant voluntary departure before the conclusion of removal proceedings if the alien:

> (A) Makes such request prior to or at the master calendar hearing at which the case is initially calendared for a merits hearing;
>
> (B) Makes no additional requests for relief (or if such requests have been made, such requests are withdrawn prior to any grant of voluntary departure pursuant to this section);
>
> (C) Concedes removability;
>
> (D) Waives appeal of all issues; and

(E) Has not been convicted of a crime described in section 101(a)(43) of the Act and is not deportable under section 237(a)(4).

A second regulation, 8 C.F.R. §1240.11(b), provides that the IJ must tell all aliens about voluntary departure. Although this regulation does not spell out the required advice, or say when it must be supplied, *In re Cordova*, 22 I.&N. Dec. 966 (1999) (BIA en banc), concluded that an IJ must raise the subject of voluntary departure at an early procedural hearing— that is to say, the sort of hearing at which the IJ identifies the issues that will be addressed by evidence at later hearings— unless the alien has been convicted of an aggravated felony, which Chavarria-Reyes has not. (Another regulation, 8 C.F.R. §1240.11(a)(2), requires comprehensive advice about all opportunities for relief from removal, but it is limited to aliens admitted for permanent residence. Chavarria-Reyes is not in that category.)

Requiring the IJ to raise the subject as soon as possible is necessary, the Board concluded in *Cordova*, because §1240.26(b)(1)(i) requires an alien to make irrevocable choices, such as abandoning all other requests for relief and waiving the right to appeal. But the IJ did not tell Chavarria-Reyes about his option to request early voluntary departure. Instead he told Chavarria-Reyes to consult with his lawyer (Chavarria-Reyes told the IJ he had one) and then make any motions or requests that counsel told him would be appropriate. It turned out that Chavarria-Reyes did not have a lawyer—at least, none ever entered an appearance—and so we must assume that he did not learn until too late about the possibility of relief under §240B(a).

Here Chavarria-Reyes encounters a final roadblock: §1252(d)(1) provides that a court may review a final order of removal "*only if* … the alien has exhausted all administrative remedies available to the alien as of right" (emphasis added). The exhaustion requirement is not a jurisdictional bar, see *Korsunskiy v. Gonzales*, 461 F.3d 847, 849 (7th Cir. 2006); *Abdelqadar v. Gonzales*, 413 F.3d 668, 670–71 (7th Cir. 2005), but it is a mandatory case-processing rule and must be enforced if a litigant claims its benefits. The Attorney General asks us to enforce this rule, observing that Chavarria-Reyes did not argue, on his appeal to the BIA, that the IJ failed to follow §1240.11(b) as understood in *Cordova*. Instead he contended that the IJ had violated the Due Process Clause of the Fifth Amendment by holding his *pro se* status against him. The BIA rejected that argument, and Chavarria-Reyes, with the benefit of counsel in this court, does not repeat it. Now he seeks relief based on an argument that he could have made, but did not. Exhaustion means not just taking an appeal to the Board but also presenting an argument, so that the Board has "an opportunity to pass upon the particular legal arguments and contentions that [the alien] now raises". *Zeqiri v. Mukasey*, 529 F.3d 364, 369–70 (7th Cir. 2008).

Chavarria-Reyes maintains that, when an IJ's error leaves an alien ignorant of his rights, it is unfair to require the alien to complain in detail to the BIA—a complaint that would depend on the very knowledge that the IJ failed to convey. Yet the statute says that judicial review is permissible "only if" exhaustion has been accomplished. Nothing in the statute suggests that an alien can avoid the exhaustion requirement by asserting ignorance of an IJ's error. Nor does the statute suggest that exhaustion is required only of aliens who have lawyers. We have not found any decision, from any circuit,

concluding that §1252(d)(1) is inapplicable to aliens who represent themselves or to aliens who claim to be in the dark about what the IJ did wrong—for a claim of ignorance is easy to make but almost impossible for the agency or a court to refute, even if the assertion is false.

The function of exhaustion is to alert the Board so that it can fix the IJ's errors. That function can't be served if courts take the existence of an error as a reason not to require exhaustion. And judges would be hard pressed to require more of an administrative tribunal than they require of themselves. When litigants file briefs in this court, the judges regularly address only those contentions presented (whether or not the litigant has a lawyer) and treat all others as forfeited. The plain-error rule of Fed. R. Crim. P. 52(b) does not apply to civil litigation or to civil administrative proceedings. Requiring the BIA to dredge through a record and find all of the things an IJ might have done but didn't do, plus all those the IJ did do, and then evaluate both actions and inactions against a long list of administrative requirements and prohibitions, would prolong and complicate all immigration proceedings. Both judges and administrative adjudicators need the help of lawyers and litigants to focus attention on problematic areas, and they are entitled to limit their consideration to contentions actually presented—whether they call that requirement forfeiture or exhaustion of remedies.

Although the exhaustion requirement prevents us from granting Chavarria-Reyes's petition, he remains free to ask the BIA to reconsider or reopen its decision in light of the IJ's failure to implement the holding of *Cordova*. That step would be unnecessary if the Attorney General consents to a reopening on the basis of this established error. And, no matter

what happens to Chavarria-Reyes, we hope that the agency will revise the procedural checklists (or "scripts") it prepares for use by IJs. The checklist for initial hearings with unrepresented aliens, https://www.justice.gov/sites/default/files/eoir/legacy/2014/08/15/Script_MC_Checklist.pdf, appears to contemplate advice about voluntary departure only if the IJ first decides that the alien is ineligible for any other kind of relief. That's not what *Cordova* contemplates: §1240.11(a)(2) requires advice to permanent residents about *all* entitlements, not just about a fallback after other possibilities have been exhausted, and §1240.11(b) requires advice to all aliens about voluntary departure. Worse, the checklist for use at hearings with aliens who have counsel—the category in which the IJ (wrongly) supposed Chavarria-Reyes to be—does not call on the IJ to give advice about voluntary departure under §240B(a), whether or not some other option is available. See https://www.justice.gov/sites/default/files/eoir/legacy/2014/08/15/Script_Initial_Hearing.pdf. The agency could do aliens, and its own personnel, a big favor by revising these checklists to reflect all entitlements within the scope of a statute or regulation.

The petition for review is denied.

POSNER, *Circuit Judge*, dissenting. This case involves a typical botch by an immigration judge. No surprise: the Immigration Court, though lodged in the Justice Department, is the least competent federal agency, though in fairness it may well owe its dismal status to its severe underfunding by Congress, which has resulted in a shortage of immigration judges that has subjected them to crushing workloads. See, e.g., Julia Preston, "Deluged Immigration Courts, Where Cases Stall for Years, Begin to Buckle," *NY Times*, Dec. 1, 2016, www.nytimes.com/2016/12/01/us/deluged-immigration-courts-where-cases-stall-for-years-begin-to-buckle.html?_r=0 (visited Dec. 30, 2016).

The immigrant, Chavarria-Reyes, is a citizen of Mexico. Although married to an American citizen with whom he has four citizen children, he is an undocumented (i.e., unlawful) immigrant who has been ordered removed. The primary issue he presents in this appeal challenging the order of removal is procedural: he was not told that he could apply, as authorized by 8 U.S.C. § 1229c(a)(1), for permission to depart voluntarily before the conclusion of the removal proceeding. Lacking legal representation until he appealed to us, he was unfamiliar with the intricacies of immigration law and therefore failed to take issue with anything the immigration judge said at the removal hearing, though the judge considered only whether to allow Chavarria-Reyes to depart voluntarily *after* completion of the removal proceeding rather than before—"after" being a steeper hill for the immigrant to climb because it requires him (as is *not* required for voluntary departure before the conclusion of the removal hearing) to prove that he "is, and has been, a person of good moral character for at least 5 years immediately preceding the alien's application for voluntary departure." § 1229c(b)(1)(B).

Applying that standard the immigration judge—without giving Chavarria-Reyes an opportunity to try to prove that he *had* been a person of good moral character for the last five years—denied voluntary departure and ordered him removed.

This was a heavy blow, because a person who has been ordered removed is subject to criminal penalties if he's found to have re-entered the United States without authorization, see 8 U.S.C. § 1326, and in addition he's not permitted to return *with* authorization for ten years, 8 U.S.C. § 1182(a)(9)(A). Had Chavarria-Reyes been allowed to depart voluntarily, he would still be barred from returning for ten years, § 1182(a)(9)(B), but he would have an opportunity to obtain a waiver of the ten-year bar by demonstrating that refusal to admit him would result in extreme hardship to his spouse, who is an American citizen.

The ground of the immigration judge's harsh ruling was her belief that the immigrant "had been arrested and convicted on several occasions for offenses ranging from retail theft, home repair fraud, driving on a revoked license, and a domestic battery" (actually there's no record of a driving offense)—a criminal record that the judge remarked "does not reflect well on the respondent's character in the United States." The judge further remarked that "his negative factors [the crimes] far outweigh any positives that have been demonstrated in this case." In fact she didn't think there were "any positives." For she was skeptical—though the government is not—that Chavarria-Reyes *has* an American family or has *ever* been employed in the 17 years he's been in the United States. Yet she never invited him to present evidence on his own behalf, and—testifying through a transla-

tor, over a video feed, without counsel—he couldn't have been expected to interrupt and insist on presenting his side of the case.

The removal proceeding was thus cursory, indeed farcical. See *Kerciku v. INS*, 314 F.3d 913, 917–18 (7th Cir. 2003). Chavarria-Reyes was given no opportunity to explain his employment history in the United States (he claims to have worked as a carpenter throughout his sojourn here, until he was detained in anticipation of the removal proceeding), to prove his family status, to promise to leave the country if granted voluntary departure—or to explain his criminal record. That record, the details of which the immigration judge ignored, is a joke, consisting as it does of three misdemeanors committed over the course of 15 years, for which crimes he served a total of seven days in jail. The government states in its brief that one of the crimes of which the immigrant was convicted was a "crime of moral turpitude." That is ridiculous, and the government doesn't even bother to say which of the immigrant's three crimes it thinks was a crime of moral turpitude.

Chavarria-Reyes was railroaded by the immigration judge. The majority does not deny this but concludes that he failed to exhaust his administrative remedies because his pro se appeal to the Board of Immigration Appeals did not provide a precise articulation of his argument that the immigration judge had failed to inform him of the possibility of voluntarily departing *before* the conclusion of his removal hearing. But by arguing both that the immigration judge had erred by failing to grant him voluntary departure and that he was denied due process at his removal hearing, Chavarria-Reyes placed the Board of Immigration Appeals on no-

tice that the immigration judge had made a hash of her duty to inform him of the availability of voluntary departure. See *Hamdan v. Mukasey*, 528 F.3d 986, 991 (7th Cir. 2008), quoting approvingly, from *Yan Lan Wu v. Ashcroft*, 393 F.3d 418, 422 (3d Cir. 2005), that "so long as an immigration petitioner makes some effort, however insufficient, to place the Board on notice of a straightforward issue being raised on appeal, a petitioner is deemed to have exhausted her administrative remedies." See also *Kaganovich v. Gonzales*, 470 F.3d 894, 897 (9th Cir. 2006); *Zhang v. Ashcroft*, 388 F.3d 713, 721 (9th Cir. 2004).

We should vacate the removal order and remand the case.