In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-2695

THOMAS A. CENSKE,

*Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:16-cv-2761 — **Tanya Walton Pratt**, *Judge.*

ARGUED DECEMBER 3, 2019 — DECIDED JANUARY 17, 2020

Before WOOD, *Chief Judge*, and HAMILTON and SCUDDER, *Circuit Judges*.

SCUDDER, *Circuit Judge*. Prisoners face unique challenges when submitting legal filings. Non-prisoners often have access to electronic filing methods and, if not, can take their filings to the post office. But prisoners must use the prison's mail system, where security concerns often cause the system to operate more slowly than standard mail. For legal filings,

timing can make all the difference, as it did for Thomas Censke.

Censke placed his administrative complaint under the Federal Tort Claims Act in the prison's mailbox with nine days to spare, but the government stamped it as received after the statutory deadline had passed. The question is which date counts—when Censke put it in the mail or when it arrived. The district court held that Censke's claim was not filed until received, so it was untimely. We reverse and hold that the prison-mailbox rule applies to a prisoner's administrative complaint under the Federal Tort Claims Act and so it is filed upon being placed in the prison's mail.

## I

Thomas Censke sought to bring a claim under the FTCA for injuries he says he suffered at the hands of prison guards in December 2013. He alleged that correctional officers and medical staff at the federal jail in Terre Haute, Indiana, physically abused him and then inadequately cared for his injuries, which included a concussion, nerve damage, and a herniated diaphragm. Before bringing his claim to court, Censke had to comply with the FTCA's administrative notice requirements. The statute required Censke to give notice in writing to the Bureau of Prisons within two years of the incident. See 28 U.S.C. § 2401(b). Notice could occur by sending a Bureau-provided form (shorthanded as SF-95) to the regional office in which the injury happened. See 28 C.F.R. §§ 14.2(a), 543.31. Bureau of Prisons regulations further provide that a complaint sent to the wrong office or agency will be transferred to the right one. See *id*. § 543.32(b). The Bureau considers claims filed when first received by any of its offices. See DEPARTMENT

OF JUSTICE, FEDERAL BUREAU OF PRISONS, Program Statement 1320.06: Federal Tort Claims Act (2003).

Censke struggled to present his administrative complaint. He moved prisons six times in the two years following the alleged incident and lost access to his legal materials while in transit. He also contends that prison staff ignored his requests for an SF-95 form. When he eventually got the form, he was being held at the federal facility in McCreary, Kentucky. Censke then asked McCreary staff for the address of the Bureau of Prisons's North Central Regional Office, which oversees Terre Haute. Again, he says, the prison officials refused to help him.

On December 7, 2015, nine days before the end of the two-year limitations period, Censke placed his SF-95 form in McCreary's outgoing mail. (Censke swore in two affidavits that he placed the form in outgoing legal mail on that date, to be sent First Class. The government presented no contrary evidence at summary judgment.) Because he still did not know the regional office address, he sent it to the Bureau of Prisons's Central Office in Washington, D.C. The record does not reflect when Censke's claim reached that office, but the Bureau stamped it as received at the North Central Regional Office on February 16, 2016—over two months after Censke put it in the mail. The Bureau denied the claim on the merits on April 22, 2016. It did not mention timeliness.

Censke then filed suit in the district court under the Federal Tort Claims Act. See 28 U.S.C. § 2401(b). The government moved for summary judgment, arguing that Censke failed to present the claim within two years of the alleged December 2013 incident. The government saw Censke's claim as too late because the Bureau did not receive it in its regional office until

after the deadline had passed. But Censke, then proceeding *pro se*, was astute enough to argue (with admirable clarity) that his claim was timely under the prison-mailbox rule or the common-law mailbox rule (which provides a presumption of receipt for a properly addressed mailing, *Hagner v. United States*, 285 U.S. 427, 430 (1932)) or under equitable doctrines. Censke also asserted that, at the very least, there was a material dispute of fact as to when the Bureau's Central Office first received his SF-95 form.

The district court concluded that the mailbox rules did not apply to render Censke's claim timely. The court also rejected Censke's arguments for equitable tolling and delayed accrual and entered summary judgment for the government.

On appeal we recruited counsel because Censke's case presents a substantive and unresolved legal issue: whether the prison-mailbox rule applies to administrative filings under the FTCA. We hold that it does.

## II

In *Houston v. Lack*, the Supreme Court recognized the prison-mailbox rule: an inmate's notice of appeal is deemed filed not when received by the court but rather when delivered to prison officials for mailing. 487 U.S. 266, 276 (1988). The Court began by observing that 28 U.S.C. § 2107, the statute governing civil appeals, required that the notice of appeal be filed within 30 days of the entry of judgment. See *Houston*, 487 U.S. at 272. While § 2107 did not define "filing," the Federal Rules of Appellate Procedure did by making expressly clear that parties intending to appeal must "fil[e] a notice of appeal with the district clerk within the time allowed [by law]." FED. R. APP. P. 3(a); see also FED. R. APP. P. (4)(a)(1)

(requiring the same). Despite this clear prerequisite, the Court held that prisoners' notices of appeal were filed upon being placed in the prison mail. What guided the Court's reasoning was the reality that prisoners have "no control over delays between the prison authorities' receipt of the notice and its filing, and their lack of freedom bars them from delivering the notice to the court clerk personally." *Houston*, 487 U.S. at 273–74. That reality provided sufficient basis to depart from the receipt-based rule applicable "in the ordinary civil case." *Id.* at 273.

In *Houston*'s wake, the prison-mailbox rule has been codified in the Federal Rules of Appellate Procedure and applied to many legal filings in this court, the district court, and administrative appeals. See, *e.g.*, FED. R. APP. P. 25(a)(2) (codifying *Houston*); *Edwards v. United States*, 266 F.3d 756, 758 (7th Cir. 2001) (per curiam) (extending rule to Rule 59 motions); *Chavarria-Reyes v. Lynch*, 845 F.3d 275, 277 (7th Cir. 2016) (extending rule to appellate papers filed in immigration cases). Until now, though, we have not decided whether the rule applies to administrative complaints brought under the FTCA.

The government points to *Fex v. Michigan*, 507 U.S. 43 (1993), and urges us to decline Censke's invitation to adopt the prison-mailbox rule. Under the government's reading, *Fex* stands for the proposition that the prison-mailbox rule cannot apply when a statute or regulation defines when a complaint is considered filed. The government says that the Department of Justice and Bureau of Prisons FTCA regulations provide the definition of filing, so the prison-mailbox rule is inapplicable. See 28 C.F.R. § 14.2(a) (providing that a claim is presented when the federal agency receives the SF-95 form); *id*.

§ 543.32(a) (defining the filing date as the date on which DOJ or the BOP first received the claim).

We cannot agree with such a broad reading of *Fex*. There the Supreme Court held that the prison-mailbox rule did not apply to the Interstate Agreement on Detainers. See *Fex*, 507 U.S. at 49–50. The Agreement allows a detainee to file a request for disposition on charges pending in another jurisdiction. See 18 U.S.C. app. 2 § 2. Article III of the Agreement provides that a prisoner under a detainer "shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer … written notice" of the request. *Id*. Confronted with the question whether the 180-day clock began when the detainee placed the letter in the prison mail system or when the prosecutor received it, the Court concluded that the Agreement was best read as requiring the latter. See *id.* at 49–50. The time-clock should begin when the state received the request, the Court reasoned, so that postal mishaps such as lost mail did not preclude the state from proceeding with a prosecution. See *id*.

Some of our sister circuits have adopted the government's reasoning and read *Fex* broadly. See, *e.g.*, *Longenette v. Krusing*, 322 F.3d 758, 765 (3d Cir. 2003) (applying the prison-mailbox rule to ownership claims in administrative forfeiture proceedings because "neither the statute nor the regulations require 'actual receipt'"); *Smith v. Conner*, 250 F.3d 277, 278–79 (5th Cir. 2001) (declining to apply the prison-mailbox rule to notice of appeal in an immigration case because Board of Immigration Appeals regulations defined filing as date of receipt); *Nigro v. Sullivan*, 40 F.3d 990, 995 (9th Cir. 1994) (declining to apply the prison-mailbox rule to inmate-complaint appeals

because regulations required receipt within established time limits).

The Second Circuit reasoned along the same lines but endorsed a narrower understanding of *Fex*. When presented with exactly the circumstances here, that court concluded that the prison-mailbox rule does apply to administrative FTCA claims. In *Tapia-Ortiz v. Doe*, the court acknowledged *Fex* but nevertheless "[saw] no difference between the filing of a court action and the filing of an administrative claim." 171 F.3d 150, 152 (2d Cir. 1999). The court found dispositive that the FTCA's definition of filing as receipt came from only regulations—not the statute itself. See *id.* at n.1 (explaining that *Fex* precludes application of the prison-mailbox rule "when there is a specific *statutory* regime to the contrary") (emphasis added).

The shortcoming of the government's reading (and the variations of it adopted by the other circuit courts) is that it sets *Fex* in unnecessary tension with *Houston*. In *Houston*, the Court applied the prison-mailbox rule after acknowledging that the text of the Federal Rules of Appellate Procedure expressly required filing with the district court clerk. See 487 U.S. at 272–73. If *Fex* stands for the proposition that the prison-mailbox rule can apply only when there is no language providing a contrary definition of receipt, we would be left to question whether *Houston*'s reasoning remains good law. But the Court has explained that it does not overrule itself silently. See *Rodriguez de Quijas v. Shearson*, 490 U.S. 477, 484 (1989). Put another way, we are hesitant to read *Fex* (which notably does not mention *Houston*) to cast doubt on the general principle that prisoners may, in the interests of justice, require different filing rules.

So, although we agree with the Second Circuit's outcome, we travel a different path of reasoning—in no small part because we see *Fex* in narrower terms. The starting point for the Supreme Court in *Fex* was twofold: recognizing ambiguity in the Agreement on Detainer's language and from there underscoring the pragmatic consequences—or, in the Court's words, "the sense of the matter." 507 U.S. at 49. In adopting the state's reading of the Agreement that the clock started to run when the request was received—as opposed to the time of the mailing—the Court explained that it did so to avoid "the worst-case scenario" that "the prosecution will be precluded before the prosecutor even knows it has been requested." *Id*. at 50.

In light of *Fex*'s context, we do not read it to stand for any broad principle that the prison-mailbox rule can apply only in a regulatory void. This observation aligns with our precedent. In *Chavarria-Reyes v. Lynch*, we held that the prison-mailbox rule applied to notices of appeal filed in immigration matters. 845 F.3d 275, 277 (7th Cir. 2016) (citing *Houston* and explaining that "[w]e can't see any reason why this rule would not apply to immigration"). In doing so, we parted ways with the Fifth Circuit, which based on its reading of *Fex*, came out the other way when answering the same question. See *Smith*, 250 F.3d at 278–79 (declining to apply the prison-mailbox rule because Board of Immigration Appeals regulations defined the filing date as date of receipt).

Because administrative claims filed under the FTCA fall within *Houston*'s framework and do not implicate the concerns underpinning the Court's reasoning in *Fex*, we hold that the prison-mailbox rule applies here. This result is on all fours with the rationale that guided the Court in *Houston*.

Recall, too, what happened here. Censke attempted repeatedly, over the course of several months, to acquire an SF-95 form and the address for the appropriate regional office. After much effort, he was able to send his claim more than a week before the deadline expired. And yet the Bureau of Prisons took the position, at least until partway through this appeal, that it did not receive his claim until over two months later. Censke's experience demonstrates that *pro se* prisoners face the same obstacles sending administrative forms as they do court documents. For both filings, "the *pro se* prisoner has no choice but to entrust the forwarding of his [filing] to prison authorities whom he cannot control or supervise[.]" *Houston*, 487 U.S. at 271.

We would reach the same result even if we were to apply *Fex*'s balance-of-the-harms approach. In *Fex*, the Court concluded that the 180-day clock should start when the prosecutor received the request—otherwise, disastrous consequences would result if the request was lost in the mail. 507 U.S. at 49–50. But here it is the prisoner who faces the stark consequence if his complaint is never received. He could be barred from bringing suit, no matter how meritorious his claim.

On the other hand, the potential harm to the federal government is not so great as to tilt the scales in its favor. The FTCA's administrative-presentment requirement has indisputable importance. It gives the agency "a fair opportunity to investigate and possibly settle the claim before the parties must assume the burden of costly and time-consuming litigation." *McNeil v. United States*, 508 U.S. 106, 111–12 (1993). To be sure, the application of the prison-mailbox rule could take away some of the agency's time to investigate before the complainant is allowed to file suit. See 28 C.F.R. § 14.2(c). But that

result is less stark than the total preclusion of a state's ability to prosecute a defendant—the scenario the Supreme Court confronted in *Fex*. Significantly, too, unlike in the context of the Interstate Agreement on Detainers present in *Fex*, this case involves no potential infringement by the federal government upon state interests.

### III

In light of our holding that the prison-mailbox rule applies to Censke's administrative claim under the Federal Tort Claims Act, we need not proceed further. Censke's claim was timely filed. Accordingly, we REVERSE and REMAND for further proceedings.